UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAY BRADSHAW,

                        Plaintiff,

              v.

ERIC MARSHAL, et al.,

                       Defendants.
_____

9:21-CV-0826
(MAD/CFH)

APPEARANCES:

JAY BRADSHAW
08-A-3654
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

MAE A. D'AGOSTINO
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

      Pro se plaintiff Jay Bradshaw commenced this action by filing a complaint asserting

claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to

proceed in forma pauperis ("IFP"), and a motion for preliminary injunctive relief.  Dkt. No. 1

("Compl."); Dkt. No. 4 ("IFP Application"); Dkt. No. 2 ("Preliminary Injunction Motion").[1]  After

this action was initiated, plaintiff filed a letter in further support of his request for injunctive

_____

     [1]  Because plaintiff initially filed his complaint without paying the filing fee or submitting a completed
application to proceed IFP, the action was administratively closed.  Dkt. No. 3.  Plaintiff then filed his IFP
Application, along with the inmate authorization form required in this District, and this action was re-opened.  Dkt.
Nos. 4, 5, 6.

relief wherein he detailed alleged wrongdoing that occurred after the complaint was filed. *See* Dkt. No. 7 ("First Supplemental Complaint").  Thereafter, plaintiff filed a document captioned as a "supplemental complaint", a document captioned as a "second supplemental complaint", and three more documents in further support of his request for injunctive relief. Dkt. No. 8 ("Second Supplemental Complaint"); Dkt. No. 9 ("First Letter in Support of Request for Injunctive Relief"); Dkt. No. 10 ("Third Supplemental Complaint"); Dkt. No. 11 ("Second Letter in Support of Request for Injunctive Relief"); Dkt. No. 12 ("Third Letter in Support of Request for Injunctive Relief").  The Clerk has sent these submissions to the Court for review.  Plaintiff, who is incarcerated at Upstate Correctional Facility ("Upstate C.F."), has not paid the filing fee for this action.

## II.   IFP STATUS

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of four hundred and two dollars ($402.00).[2]  The Court must also determine whether the "three strikes" provision of 28 U.S.C. § 1915(g) ("Section 1915(g)") bars the plaintiff from proceeding IFP and without prepayment of the filing fee.[3] More specifically, Section 1915(g) provides as follows:

---

[2]  "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee . . . at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[3]  The manifest intent of Congress in enacting Section 1915(g) was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates.  *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007).  The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the court to determine as a matter of law.  *Tafari*, 473 F.3d at 442-43.

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  If the plaintiff is indigent and not barred by Section 1915(g), the Court must consider the sufficiency of the claims stated in the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

In this case, plaintiff has demonstrated economic need and has filed the inmate authorization form required in the Northern District of New York.  *See* Dkt. Nos. 4, 5.  Thus, the Court must determine whether the "three strikes" rule of Section 1915(g) bars plaintiff from proceeding with this action IFP.

## A.    Determination of "Strikes"

Plaintiff is a frequent litigator, having commenced, in addition to this action, at least twenty-one previously filed civil actions in the district courts in the Second Circuit since 2008. *See* PACER Case Locator <https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf> (last visited September 9, 2021).  The following is a list of those actions: (1) *Bradshaw v. McQueen*, No. 08-CV-5518 (S.D.N.Y. filed June 18, 2008); (2) *Bradshaw v. Officer Banks*, No. 09-CV-0966 (S.D.N.Y. filed Feb. 4, 2009); (3) *Bradshaw v. Brown*, No. 13-CV-4308 (E.D.N.Y. filed July 31, 2013); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166 (E.D.N.Y. filed Apr. 13, 2015); (5) *Bradshaw v. The City of New York*, No. 15-CV-4638 (S.D.N.Y. filed June 10, 2015); (6) *Bradshaw v. The City of New York*, No. 15-CV-5481 (S.D.N.Y. filed July 10, 2015); (7) *Bradshaw v. The City of New York*, No. 15-CV-7074

(S.D.N.Y. filed Sept. 8, 2015); (8) *Bradshaw v. The City of New York*, No. 15-CV-8252 (S.D.N.Y. filed Oct. 20, 2015); (9) *Bradshaw v. The City of New York*, No. 15-CV-9031 (S.D.N.Y. Nov. 17, 2015); (10) *Bradshaw v. The City of New York*, No. 17-CV-1199 (S.D.N.Y. filed Feb. 16, 2017); (11) *Bradshaw v. The City of New York*, No. 17-CV-1168 (E.D.N.Y. filed Feb. 27, 2017); (12) *Bradshaw v. The City of New York*, No. 18-CV-8215 (S.D.N.Y. filed Sept. 7, 2018) ("*Bradshaw v. The City of New York IX*"); (13) *Bradshaw v. Locke*, No. 19-CV-428 (N.D.N.Y. filed April 10, 2019) ("*Bradshaw v. Locke*"); (14) *Bradshaw v. Burns*, No. 19-CV-931 (N.D.N.Y. filed July 31, 2019) ("*Bradshaw v. Burns*"); (15) *Bradshaw v. Annucci*, No. 20-CV-6083 (W.D.N.Y. filed Feb. 6, 2020); (16) *Bradshaw v. Piccolo*, No. 20-CV-6106 (W.D.N.Y. Feb. 18, 2020); (17) *Bradshaw v. Piccolo*, No. 20-CV-6368 (W.D.N.Y. filed June 4, 2020); (18) *Bradshaw v. Annucci*, No. 20-CV-6548 (W.D.N.Y. Sept. 29, 2020); (19) *Bradshaw v. Piccolo*, No. 21-CV-6050 (W.D.N.Y. filed Jan. 19, 2021); (20) *Bradshaw v. Gordon*, No. 21-CV-0645 (N.D.N.Y. filed June 3, 2021) ("*Bradshaw v. Gordon*"); and (21) *Bradshaw v. Uhler*, No. 21-CV-0776 (N.D.N.Y. filed July 8, 2021) ("*Bradshaw v. Uhler*").[4]

Upon review of these actions, and consistent with the determinations reached by the Honorable Brenda K. Sannes in *Bradshaw v. Locke* and *Bradshaw v. Burns*, and by the Honorable Glenn T. Suddaby in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*, this Court finds that, as of the date that plaintiff commenced this action, he had acquired at least four "strikes."[5] As a result, plaintiff's IFP Application must be denied unless it appears that the

---

[4] *Bradshaw v. Locke, Bradshaw v. Burns*, *Bradshaw v. Gordon*, and *Bradshaw v. Uhler* are all currently pending in this District.

[5] The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate (continued...)

"imminent danger" exception to the "three strikes" rule set forth in Section 1915(g) is applicable to this action.

## B.      Applicability of the "Imminent Danger" Exception

The "imminent danger" exception protects a prison inmate exposed to potential serious physical injury from the consequences of his earlier mistakes in filing frivolous litigation.  Generally speaking, the allegations relevant to this inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010).  The Second Circuit has described the nature of the Court's inquiry regarding imminent danger as follows: "although the feared physical injury must be serious, we should not make an overly detailed inquiry into whether the allegations qualify for the exception, because § 1915(g) concerns only a threshold procedural question, while [s]eparate PLRA provisions are directed at screening out meritless suits early on."  *Id*. at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)) (internal quotation marks omitted).

"[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007); *Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018).  However,

---

[5](...continued)
dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16. 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact").  In *Bradshaw v. Locke*, Judge Sannes specifically discussed each of these four "strikes" in her initial Decision and Order entered on May 9, 2019.  *See id.*, Dkt. No. 8.

"allegations of past violence can satisfy the imminent danger exception when, for example, the past harms are part of an ongoing pattern of acts." *Carter v. New York State*, No. 20-CV-5955, 2020 WL 4700902, at *1 (S.D.N.Y. Aug. 12, 2020) (citing *Chavis*, 618 F.3d at 170 (holding that "[a]n allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception.")).

In addition, "§ 1915(g) allows a three-strikes litigant to proceed [IFP] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296.  In deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id*. at 298-99.

In this case, plaintiff alleges that on July 12, 2021, he was assaulted by various corrections officials on three separate occasions.  *See* Compl. at 1-2.  The first assault allegedly occurred while plaintiff was being escorted to his cell, and continued inside of his cell, the second assault allegedly occurred outside of plaintiff's cell before he was escorted to the medical facility for injuries suffered during the first assault, and the third assault allegedly occurred while plaintiff was in a transport vehicle en route to an outside hospital.  *Id*.

Plaintiff also alleges that he was threatened with future harm as follows: (1) defendant Corrections Sergeant Marshall stated during the first assault, "we are going to whip your ass

every time we feel like it"; (2) defendant Corrections Captain Gravlin stated after the second assault that officials transporting plaintiff to the outside hospital were "going to whip [his] ass"; (3) defendant Corrections Officer Welch stated during the third assault, while en route to the outside hospital, that plaintiff's treatment would be "worse" following his return from the outside hospital; (4) defendant Corrections Officer John Doe #2 stated at the outside hospital that he intended to "break [plaintiff's] ribs" on "the ride back to the prison"; and (5) defendant Corrections Sergeant stated at the outside hospital that plaintiff was "lucky" defendants Welch and John Doe #2 were relieved by other officers, but "we'll get you" at the prison. Compl. at 1-2.

Certainly these allegations plausibly suggest that on July 12, 2021, plaintiff was subjected to acts that collectively satisfy the imminent danger exception. However, plaintiff's complaint is dated July 19, 2021. *See* Compl. at 3. In addition, the complaint lacks any allegations which plausibly suggest that plaintiff was assaulted or threatened at any other point between July 12 and July 19, 2021. Thus, the issue for this Court is whether or not the allegations in the complaint are sufficient to plausibly suggest that the risk of harm that existed on July 12, 2021, continued to exist when plaintiff filed the complaint one week later, i.e., whether plaintiff's allegations plausibly suggest an ongoing pattern of acts that satisfy the imminent danger exception.

In considering this issue, the Court must bear in mind the allegations made by plaintiff in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*, his other two recently-filed complaints. In *Bradshaw v. Gordon*, plaintiff alleged, among other things, that he was assaulted on or around May 20, 2021, by several corrections officials from Upstate C.F., including one of the named defendants in this case, Corrections Officer Orbegozo. *See Bradshaw v. Gordon*,

7

Dkt. No. 1 at 1-2.  Plaintiff further alleged that Corrections Officer Orbegozo and others thereafter denied him meals over a three-and-a half day period between May 28 and May 31, 2021, because he filed a grievance regarding the assault.  *Id.*  In addition, in *Bradshaw v. Uhler*, plaintiff alleged, among other things, that one of the defendants in this case, Corrections Sergeant Marshall, harassed him on June 11, 2021, and he was thereafter assaulted by other corrections officials at Upstate C.F. on June 18 and July 1, 2021. *Bradshaw v. Uhler*, Dkt. No. 1 at 2-4.

At this stage of the proceeding, the Court finds that these allegations, considered in combination with the allegations in this action, plausibly suggest that plaintiff remained "under imminent danger of serious physical injury" when he signed his complaint on July 19, 2021.  *See, e.g., Chavis*, 618 F.3d at 170.[6]  Accordingly, plaintiff is granted leave to commence this action IFP.

The Court notes that this is a preliminary finding which defendants are entitled to challenge or refute in future filings.  Plaintiff's IFP status will be revoked if, as the case progresses, it is determined that he did not face "imminent danger" when he commenced this action or is otherwise not entitled to proceed IFP.

## III.    SUPPLEMENTAL SUBMISSIONS

### A.    Relevant Legal Standard

The filing of a supplemental pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 15.  Specifically, Rule 15(d) allows a party, "[o]n motion and

---

[6] In reaching this conclusion, the Court has not considered plaintiff's allegations in his supplemental submissions because "imminent danger" status must be evaluated at the time of filing.

8

reasonable notice, . . . to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).  In the case of proposed amendments where new defendants are to be added, the Court must also look to Rule 21 of the Federal Rules of Civil Procedure, which states that a party may be added to an action "at any time, on just terms."  Fed. R. Civ. P. 21.

It is well-settled that leave to supplement should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283); *Albrecht v. Long Island R.R*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991) (noting that a party may supplement to include subsequent occurrences "absent prejudice to the nonmoving party").  However, "[c]ourts regularly deny motions to amend where the moving party seeks to add claims involving collateral matters, based on different factual allegations and distinct legal theories, from the claims already at issue in a case."  *Amusement Indus. v. Stern*, No. 07-CV-11586, 2014 WL 4460393, at *13 (S.D.N.Y. Sept. 10, 2014); *see also Mitchell v. Cuomo*, No. 17-CV-0892 (TJM/DJS), 2019 WL 1397195, at *3 (N.D.N.Y. Mar. 28, 2019) (adopting Magistrate Judge's recommendation to deny motion to supplement where "[t]he proposed First Amendment claims are neither related to nor pertain to the allegations in the operative pleading, thus providing a basis to deny amendment under Rule 15(d)"); *Beckett v. Inc. Vill. of Freeport*, No. 11-CV-2163, 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014) ("Supplemental pleadings are limited to subsequent events related to the claim or defense presented in the original pleading." (internal quotation

marks omitted)); *Brooks v. Rock*, No. 11-CV-1171 (GLS/ATB), 2014 WL 1292232, at *3 (N.D.N.Y. Mar. 28, 2014) (denying motion to amend to add allegations of retaliation and failure to protect from alleged conspiracy, where the original facts occurred in 2011 and the proposed new facts occurred in 2013); *Smith v. Goord*, No. 04-CV-6432, 2007 WL 496371, at *3 (W.D.N.Y. Feb. 12, 2007) (denying motion to add claims against original and new defendants based on events occurring more than one year after the original alleged events).

The decision to grant or deny a motion to amend or supplement is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion. *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001); *Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).[7]

### B.   Analysis

As an initial matter, plaintiff's supplemental submissions were not accompanied by a proper motion as required by Federal Rule of Civil Procedure 15(d).  In addition, the proposed supplemental pleadings do not contain paragraphs numbered consecutively to the paragraphs contained in the original complaint, as required by Local Rule 15.1(d).  However, the submissions were filed before the Court's initial review of the original complaint.  In addition, plaintiff is proceeding pro se.  Thus, the Court will excuse the technical defects associated with plaintiff's submissions.

Turning to the merits of plaintiff's request to supplement his pleading, the allegations in the complaint relate to use-of-force incidents and threats of future harm that occurred

---

[7] The Local Rules of Practice of the Northern District of New York require that a motion to amend or supplement be supported by a proposed pleading.  N.D.N.Y.L.R. 15.1(d).  A plaintiff seeking to supplement a pleading must submit a proposed pleading which is limited to "transactions or occurrences or events which have occurred since the date of the pleading that the party seeks to supplement," and which contains paragraphs numbered consecutively to the paragraphs contained in the pleading that it seeks to supplement.  *Id.*

around the time this action was commenced.  *See generally*, Compl.  The allegations in the supplemental pleadings relate to the denial of tablet privileges, and continued threats of physical harm, during the weeks following the alleged use-of-force incidents discussed in the complaint.  *See* First Supplemental Complaint; Second Supplemental Complaint; Third Supplemental Complaint.

The denial of tablet privileges does not present an imminent risk of serious physical harm, or relate, in any respect, to the use of force incidents detailed in the complaint. Moreover, while threats of future harm may suggest the continued risk of imminent danger, the alleged threats detailed in the supplemental submissions are insufficient to state a cognizable constitutional claim.  Thus, the Court need not consider the supplemental submissions as part of its sufficiency review herein.  However, for the sake of efficiency, the Court will do so, and explain why the allegations contained in these submissions are insufficient to state a claim upon which relief may be granted.

## IV.    INITIAL REVIEW OF THE COMPLAINT AS SUPPLEMENTED

### A.    Legal Standard Governing Sufficiency Review

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because he seeks relief from officers and employees of governmental entities, the Court must now consider the sufficiency of the allegations set forth in his complaint, as supplemented, in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. §1915(e).

Similarly, Section 1915A directs that a court must review any "complaint in a civil action in

which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim

upon which relief may be granted; or . . . seeks monetary relief from a defendant who is

immune from such relief."  28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639

(2d Cir. 2007) (stating that Sections 1915(e) and 1915A are available to evaluate prisoner

pro se complaints).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules

of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provides

that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the

adverse party the opportunity to file a responsive answer, prepare an adequate defense and

determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95-CV-

4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland

Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations

omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state

a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine whether plaintiff may properly proceed with this action.

### B.    Summary of the Complaint as Supplemented

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Upstate C.F.  The following facts are set forth as alleged by plaintiff in his complaint and supplemental submissions.

On July 12, 2021, defendant Corrections Officers Orbegozo and John Doe #1 removed plaintiff from his cell, placed him in handcuffs, shackled the handcuffs to his waist, and escorted him out of his cell block area for a hearing.  Compl. at 1.  While en route to the

hearing room, defendant Orbegozo "repeatedly and deliberate[ly] collided his body against [plaintiff.]"  *Id.*  At some point during the escort, plaintiff encountered defendant Corrections Sergeant Marshall.  *Id.*  Plaintiff told defendant Marshall that defendant Orbegozo's actions may cause him to fall, but defendant Marshall "ignored" his complaints.  *Id.*

Thereafter, plaintiff encountered defendant Corrections Sergeant Veneske.  Compl. at 1.[8]  Plaintiff complained to defendant Veneske about defendant Orbegozo's actions, and defendant Veneske responded that he did not care and directed plaintiff to "go back to the cell."  *Id*.  Defendant Orbegozo then escorted plaintiff back to his cell.  *Id.*

While en route to plaintiff's cell, defendant Marshall directed defendant Orbegozo to "slam" plaintiff to the floor, and defendant Orbegozo complied.  Compl. at 1.  Thereafter, plaintiff arrived at his cell.  *Id.* at 2.  After plaintiff was "uncuffed[,]" he "walked to enter [his] cell[,] but was slammed to the floor" by defendant Corrections Officer Locke.  *Id.*  Defendant Locke then "dragged" plaintiff into the cell and he and defendant John Doe #1 then "punch[ed] and kicked [plaintiff]" as he "laid on the floor."  *Id.*  As the assault was happening, defendant Marshall "kicked [plaintiff] a few times" and stated, "we are going to whip your ass in here every time we feel like it[.]"  Compl. at 2.

Following the assault, plaintiff "spoke with medical staff[,]" who "directed" that he be "brought to the clinic."  Compl. at 2.  Thereafter, plaintiff was removed from his cell.  *Id.*  Before being "waist shackled," plaintiff tied his shoes and attempted to fix the mask on his face, but was "slammed to the floor" by defendant Corrections Officer Russell.  *Id.*  Plaintiff was then "brought to the clinic and evaluated by medical staff, who referred [him] to an

---

[8]  Although the complaint does not name Veneske as a defendant, the First Supplemental Complaint does.  *Compare* Compl. *with* First Supplemental Complaint.

14

outside hospital." *Id.*

While awaiting transport to the outside hospital, defendant Corrections Captain Gravlin told plaintiff that the officials assigned to transport him, defendant Corrections Officer Welch and defendant Corrections Officer John Doe #2, were "going to whip [his] ass." Compl. at 2.  Plaintiff was then placed in a transport vehicle.  *Id.*

While en route to the hospital, defendant Welch "repeated[ly] choked . . . and punched [plaintiff] in the back of [his] head," and defendant John Doe #2 "poked [plaintiff] in the torso with his stick."  Compl. at 2.  Defendant Welch also stated that plaintiff would experience "worse" treatment "upon [his] return to the facility[.]" *Id.*

At the hospital, defendant John Doe #2 threatened to "break [plaintiff's] ribs" and defendants Welch and John Doe #2 stated that they would "mace" plaintiff and "hit [him] with their sticks" during "the ride back to the prison."  Compl. at 2.  Plaintiff quietly informed a nurse about these threats, and the nurse "had [plaintiff] remain in the hospital until Welch and [John Doe #2] were relieved by other officers."  *Id.*

Following the shift change, defendant Corrections Sergeant Soucia told plaintiff he was "lucky" that defendants Welch and John Doe #2 were relieved, but that facility officials would "get [him]" upon his return to the prison.  Compl. at 2.  Before plaintiff left the hospital, he "was examined and . . . received stitches on [his] face[.]"  *Id*. at 3.

Plaintiff believes he was assaulted and threatened because he submitted written complaints and verbally complained about the behavior of corrections officials during "phone calls[.]"  Compl. at 3.  According to plaintiff, the Superintendent of Upstate C.F., defendant Uhler, was "on notice of the conduct of the officers and sergeants" based on "complaints" made by plaintiff, yet "failed to take disciplinary action against them, or otherwise control their

15

behavior."  *Id.*

On July 27, 2021, an unidentified corrections official informed plaintiff that defendant Veneske "did not want plaintiff to have tablet privileges[.]"  Second Supplemental Complaint at 1.  The tablet privileges are afforded to certain inmates confined in the special housing unit ("SHU") "as a means of therapy."  *Id*.

On August 1, 2021, plaintiff submitted a grievance regarding the wrongdoing that occurred on July 12, 2021.  First Supplemental Complaint at 1.  However, Grievance Supervisor Sherri Debgah (not a party) did not file the grievance.  *Id*.  That same day, defendant Corrections Officer Lamica delivered mail to plaintiff at his cell and stated, "[w]e are going to get you for what you said about [defendant] Locke."  *Id*.[9]

On August 10, 2021, an unidentified corrections officer delivered a breakfast meal to plaintiff at his cell and advised that unidentified corrections officials planned to assault him. Second Supplemental Complaint at 1.  On August 17, 2021, defendant Corrections Officer Gibson delivered plaintiff the written disciplinary disposition associated with the misbehavior report plaintiff received for the events that occurred on July 12, 2021.  Second Supplemental Complaint at 2.  During this encounter, defendant Gibson stated, "[d]on't think its [sic] over, you will get your ass beat some more."  *Id*.

The next day, defendant Marshall spoke with plaintiff regarding the incident that occurred on July 12, 2021, and advised plaintiff that he would "do it again" and "only . . . have to worry about . . . the paperwork."  Second Supplemental Complaint.

---

[9]  Confusingly, the Second Supplemental Complaint alleges that Lamica delivered the mail to plaintiff and made this statement on July 30, 2021, i.e., before plaintiff submitted his grievance.  *See* Second Supplemental Complaint at 1.

16

As a result of defendant Veneske's decision to revoke plaintiff's tablet privileges, plaintiff was denied tablet privileges between July 27 and August 21, 2021.  Second Supplemental Complaint at 1-3.[10]

On August 23, 2021, defendant Corrections Officer Gadway "was collecting dinner trays from plaintiff and repeatedly murmured – enough for [plaintiff] to hear – 'we are going to kill you.'"  Third Supplemental Complaint at 1.

Liberally construed, the complaint, as supplemented, asserts the following claims for relief against the named defendants in their individual capacities: (1) Eighth Amendment excessive force and failure-to-intervene claims against defendants Veneske, Orbegozo, Marshall, Locke, John Doe #1, Russell, Gravlin, Welch, John Doe #2, Soucia, and Uhler;[11] (2) Eighth Amendment harassment claims against defendants Lamica, Gibson, Marshall, and Gadway; (3) Eighth Amendment conditions-of-confinement claims against defendants Veneske, Mallette, and Brunson based on denying plaintiff tablet privileges;[12] (4) First

---

[10]  The Second Supplemental Complaint also names Corrections Officer Mallette and Corrections Officer Brunson as defendants, and alleges that these officials carried out defendant Veneske's directive and denied plaintiff tablet privileges on one or more days during this time period.  *See* Second Supplemental Complaint at 1-3.

[11]  This claim is asserted against defendant Uhler under a theory of supervisory liability.

[12]  Plaintiff does not allege that any of the named defendants were responsible for his confinement in the SHU.  Moreover, the deprivation of tablet privileges for roughly three weeks does not implicate the loss of a liberty interest.  *See, e.g., Keyes v. Annucci*, No. 9:18-cv-0372 (GTS/DJS), 2019 WL 4602240, at *13-14 (N.D.N.Y. Sept. 23, 2019) (granting motion to dismiss insofar as plaintiff's due process claim was based on alleged keeplock confinement with loss of package, commissary, phone and recreation privileges for 60 days); *Edelkind v. Killian*, No. 09-CV-5835, 2011 WL 10599973, at *16 (S.D.N.Y. Aug. 31, 2011) ("[L]oss of telephone privileges is plainly a common incident of prison life and hence does not itself reflect a circumstance that implicates the loss of a liberty interest."); *Johnson v. Enu*, No. 08-CV-0158 (FJS/DRH), 2011 WL 3439179, at *12 (N.D.N.Y. July 13, 2011) (suspension of recreation, commissary, and phone privileges did not give rise to a protected liberty interest); *Holland v. Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (77 days in keeplock during which plaintiff was deprived of TV, phone, packages, and commissary, and was unable to go to Muslim services and classes, did not create a protected liberty interest).  Thus, the Court does not construe the allegations in the Second Supplemental Complaint regarding the denial of tablet privileges to assert a Fourteenth Amendment due process claim.

Amendment retaliation claims against defendants Veneske, Mallette, and Brunson; and (5) Fourteenth Amendment equal protection claims against defendants Veneske, Mallette, and Brunson based on the revocation of plaintiff's tablet privileges.[13]

Plaintiff seeks an award of money damages as well as injunctive relief.  Compl. at 3. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint and supplemental submissions.

### C.    Analysis

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Defendant Uhler

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Thus, "a Section 1983 plaintiff must 'allege a tangible connection between

---

[13]  The Clerk is directed to add Corrections Sergeant Veneske, Corrections Officer Brunson, Corrections Officer Mallette, Corrections Officer Lamica, Corrections Officer Gibson, and Corrections Officer Gadway to the docket as defendants.

18

the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

The Second Circuit recently clarified that "there is no special rule for supervisory liability."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Instead, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 676).  Thus, in the context of an Eighth Amendment claim against a supervisory official, for example, a plaintiff must plead and prove that the supervisory official himself "acted with deliberate indifference—meaning that [the official] personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety."  *Id*. at 619 (internal quotation marks and citation omitted).

In this case, the complaint is devoid of any allegations which plausibly suggest that defendant Uhler directly participated in any of the alleged use-of-force incidents.  Instead, plaintiff generically alleges that this official became aware, through "complaints" made by plaintiff, of "the conduct of the officers and sergeants" at Upstate C.F., yet "failed to take disciplinary action against them, or otherwise control their behavior."  Compl. at 3.  The complaint, however, lacks any allegations regarding when plaintiff made such "complaints," or what was stated in these "complaints."  Thus, the Court has no basis to plausibly infer that

defendant Uhler knew (or had a basis for knowing) that plaintiff was at risk of being assaulted at any point before the alleged use-of-force incidents that occurred on July 12, 2021.

Moreover, insofar as plaintiff has named Superintendent Uhler as a defendant based on allegations that this official failed to investigate and discipline officials for prior acts of wrongdoing, prisoners do not have a constitutional right to an investigation. *DeShaney v. Winnebego Soc. Servs*., 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases)).

In short, plaintiff has failed to adequately allege that defendant Uhler was personally involved in any of the wrongdoing detailed in the complaint. *See also Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) (noting that a "failure to remedy" theory of liability is not available against a supervisor with respect to discrete and completed violations); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong must have been ongoing or otherwise capable of mitigation at the time the supervisory official was apprised thereof."); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation."). Furthermore, in light of the

20

absence of any allegations which plausibly suggest that defendant Uhler was aware of the possibility that plaintiff would be assaulted and had an opportunity to prevent the harm, the Court also has no basis to plausibly infer that the alleged inaction by defendant Uhler was based on deliberate indifference to plaintiff's well being.

Accordingly, plaintiff's Eighth Amendment claim against defendant Uhler is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2.   Eighth Amendment Excessive Force and Failure-to-Intervene Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This includes punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[14]

"To determine whether a defendant acted maliciously, several factors should be

---

[14]  In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated."  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'" *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

When a citizen is subjected to excessive force, "an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer." *Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017) (collecting cases), *report and recommendation adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (internal quotation marks and citation omitted)).

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment claims against defendants Orbegozo, John Doe #1, Marshall, Locke, Russell, Welch, John Doe #2, and Gravlin survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to defendants

Veneske and Soucia because the complaint alleges only that Veneske told plaintiff he did not care about defendant Orbegozo colliding into him, and Soucia told plaintiff that he was "lucky" defendants Welch and John Doe #2 would not be escorting him back to Upstate C.F. from the hospital, and facility officials would "get [him]" upon his return to the prison.  Compl. at 1-2.  The complaint lacks any allegations which plausibly suggest that either of these officials (1) was aware, prior to any of the alleged use-of-force incidents, that plaintiff was likely to be assaulted, and (2) had an opportunity to intervene to prevent any of the alleged assaults from occurring.  Furthermore, defendant Soucia's alleged threat that unidentified officials would subject plaintiff to future harm, without more, is insufficient to state a cognizable Section 1983 claim.  *See, e.g., Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam) (holding that verbal harassment in the absence of any appreciable injury does not state a claim under § 1983); *Felder v. Filion*, 368 Fed. App'x 253, 256 (2d Cir. 2010) ("The allegation that Lifford threatened Felder verbally was not a sufficient basis for a claim of Eighth Amendment violation because Felder did not present evidence of any injury resulting from those threats."); *Best v. City of New York*, No. 11-CV-4475, 2012 WL 5458054, at *7 (S.D.N.Y. Nov. 8, 2012) ("Fear of assault, by itself, does not constitute a sufficiently serious injury to state a claim for failure to protect"); *Williams v. United States*, No. 07-CV-3018, 2010 WL 963474, at *16 (S.D.N.Y. Feb. 25, 2010) (concluding that allegation that corrections official threatened to "teach [plaintiff] a lesson", which was "not followed by any [alleged] physical acts," was "insufficient to state a constitutional violation"), *report and recommendation adopted by* 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006) ("verbal intimidation does not rise to

23

the level of a constitutional violation").

Accordingly, plaintiff's Eighth Amendment claims against defendants Veneske and Soucia are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Eighth Amendment Harassment Claims

In the Second Supplemental Complaint, plaintiff alleges that defendants Lamica, Gibson, and Marshall made threatening statements to plaintiff, suggesting that he would be harmed in the future.  *See* Second Supplemental Complaint at 1-2.  Plaintiff further alleges that the threats caused him to fear for his safety.  *Id*. at 2-3.  In the Third Supplemental Complaint, plaintiff alleges that Corrections Officer Gadway stated, in his presence, "we are going to kill you."  Third Supplemental Complaint at 1.

As noted above, in the absence of any appreciable injury, verbal harassment does not give rise to a cognizable Section 1983 claim.  *Purcell*, 790 F.2d at 265.  Accordingly, plaintiff's Eighth Amendment claims against defendants Lamica, Gibson, Marshall, and Gadway are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Eighth Amendment Conditions-of-Confinement Claims

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety."  *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981).  To demonstrate that the conditions of confinement constitute cruel

and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element.  *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). Specifically, a plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference."  *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

Generally speaking, the "[n]ormal conditions of SHU confinement do not constitute an Eighth Amendment violation[,]" and "[s]uch confinement is not abnormal unless it is 'without penological justification, grossly disproportionate, or involving the unnecessary and wanton infliction of pain.'"  *Branch v. Goord*, No. 05-CV-6495, 2006 WL 2807168, at *5 (S.D.N.Y. Sept. 28, 2006) (quoting *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984)).

Here, plaintiff alleges that he was denied tablet privileges for approximately three weeks between July and August, 2021.  *See* Second Supplemental Complaint.  Plaintiff further alleges that the tablet privileges are afforded to inmates such as him "as a means of therapy."  *Id*.

As an initial matter, the Court has no basis to plausibly infer from the allegations in the Second Supplemental Complaint that plaintiff's loss of tablet privileges for approximately three weeks deprived him of a basic human need.  *See, e.g., Branch*, 2006 WL 2807168, at *3-5 (S.D.N.Y. Sept. 28, 2006) (finding inmate's 45-day sentence in keeplock confinement with a loss of privileges did not violate the Eighth or Fourteenth Amendment) (citing cases); *Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002) (holding that inmate plaintiff being "cut off from the prison population, a computer program, religious services, legal research,

25

medical showers and personal property, as well as limits on food access, and other normal incidents of SHU confinement, are not violations of the Eighth Amendment.").  Furthermore, the Second Supplemental Complaint lacks any allegations which plausibly suggest that any of the officials who deprived plaintiff of tablet privileges did so despite knowing that plaintiff faced a substantial risk of serious harm by not having access to his assigned tablet for three weeks.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (deliberate indifference exists if an "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Veneske, Mallette, and Brunson are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5.  First Amendment Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (*quoting Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant

26

took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (*quoting Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Plaintiff alleges that he did not receive tablet privileges between July 27 and August 22, 2021, because defendant Veneske "did not want plaintiff to have [these] privileges . . . apparently for reporting that [he] had been subjected to an [sic] vicious an[d] unprovoked attack on July 12, 2021[.]"  Second Supplemental Complaint at 1.  Plaintiff further alleges that defendants Brunson and Mallette carried out defendant Veneske's wishes and denied him tablet privileges during this time period.  *Id*. at 1-3.

As an initial matter, it is unclear from the allegations in the complaint and supplemental submissions whether plaintiff received tablet services between July 12 and 26, 2021.  In any event, even assuming that plaintiff's tablet services were revoked for the first time on July 27, 2021, the First Supplemental Complaint expressly alleges that plaintiff submitted his grievance regarding the events of July 12, 2021, on August 1, 2021, *i.e.*, four days *after* defendant Veneske ordered that plaintiff's tablet privileges be revoked.  Thus, the decision to revoke plaintiff's tablet privileges could not have been casually connected to the grievance plaintiff submitted regarding the events of July 12, 2021.  *See Melecio v. Fischer*, No. 9:10-CV-289 (FJS/RFT), 2011 WL 6987299, at *8 (N.D.N.Y. Sept. 27, 2011) (recommending dismissal of retaliation claim where there were allegations in the pleading that plaintiff had filed grievances and subsequently experienced adverse action but there

27

were no allegations plausibly suggesting "a causal connection between his protected conduct of filing grievances and the Defendants' adverse actions"), *report and recommendation adopted by* 2012 WL 92846 (N.D.N.Y. Jan. 11, 2012); *Thaxton v. Simmons*, No. 9:10-CV-1318 (MAD/RFT), 2012 WL 360104, at *8 (N.D.N.Y. Jan. 5, 2012) ("In satisfying the causal connection requirement, also known as temporal proximity, the allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" (quoting *Dawes*, 239 F.3d at 492) ), *report and recommendation adopted by* 2012 WL 360141 (N.D.N.Y. Feb. 2, 2012).

In addition, the complaint and supplemental submissions lack any allegations which plausibly suggest that defendants Brunson and Mallette (1) were aware of plaintiff's grievance, or (2) denied plaintiff tablet privileges after plaintiff submitted his grievance *because* he submitted the grievance.  *See Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2017 WL 384066, at *7 (N.D.N.Y. Jan. 27, 2017) (dismissing retaliation claim against corrections officer where plaintiff failed to allege that corrections officer was aware of the protected activity that gave rise to the claim); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 208 (N.D.N.Y. 2015) (same).  To the contrary, the allegations in the Second Supplemental Complaint plausibly suggest that defendants Brunson and Mallette denied plaintiff tablet privileges after July 27, 2021, because that is what defendant Veneske, their supervisor, ordered.

Accordingly, plaintiff's First Amendment retaliation claims against defendants Veneske, Brunson, and Mallette are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Here, plaintiff alleges, in conclusory fashion, that the actions of defendants Lamica, Gibson, Marshall, Veneske, Brunson, and Mallette "violate[d] [his] right to equal treatment under the law[.]" Second Supplemental Complaint at 3.

The Second Supplemental Complaint lacks any allegations which plausibly suggest that plaintiff was subjected to threats, or denied tablet privileges, as a form of purposeful discrimination aimed at a suspect or quasi-suspect class. Furthermore, insofar as plaintiff intended to assert an equal protection claim under a "class of one" theory, plaintiff has not

29

alleged any facts which plausibly suggest that he was intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment.  Indeed, the Second Supplemental Complaint fails to identify any similarly situated inmates who were treated differently than plaintiff.  *See Iqbal*, 556 U.S. at 678 (concluding that a pleading that only "tenders naked assertions devoid of further factual enhancement" will not survive sua sponte review) (internal quotations and alterations omitted); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Thomas v. Pingotti*, No. 9:17-CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause.").

Accordingly, plaintiff's Fourteenth Amendment equal protection claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**V.      PRELIMINARY INJUNCTION MOTION**

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood  of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)).  However, when the moving

30

party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher.  *Cacchillo v. Insmed, Inc*., 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)).  A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts*., 598 F.3d at 35 n.4) (internal quotation marks omitted)); *see also Tom Doherty Assocs., Inc*. *v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim).  The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order.  *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008).  The district court has wide discretion in determining whether to grant preliminary injunctive relief.  *Moore v. Consol. Edison Co. of New York, Inc*., 409 F.3d 506, 510 (2d Cir. 2005).

   Plaintiff's request for injunctive relief seeks an order directing defendants to "keep [plaintiff] free from attack by officers at Upstate" while he remains there, and "transfer [him] to another facility where [he] will remain free from attack."  *See* Preliminary Injunction Motion at 3.

   Upon review of the file in this matter, the Court finds that a response to plaintiff's

request for injunctive relief must be filed by the surviving defendants.[15]  The Court directs these defendants, or their counsel, to respond to plaintiff's Preliminary Injunction Motion (Dkt. No. 2) and supplemental submissions seeking injunctive relief (Dkt. Nos. 7, 9, 11, 12) within thirty (30) days of the date of service of the summons and complaint upon any defendant. After a defendant has filed a response to these submissions, the Clerk shall return this file to the Court for further review.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's application for leave to proceed IFP (Dkt. No. 4) is **GRANTED** in accordance with 28 U.S.C. § 1915(g) because plaintiff has made a preliminary showing that he is entitled to the "imminent danger" exception; and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 5), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's inmate authorization form (Dkt. No. 5) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Clerk shall add Corrections Sergeant Veneske, Corrections Officer Brunson, Corrections Officer Lamica, Corrections Officer Mallette, Corrections Officer Gibson, and Corrections Officer Gadway to the docket as defendants; and it is further

---

[15]  The Court takes no position on the ultimate merits of plaintiff's motion for preliminary injunctive relief at this time.

32

**ORDERED** that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Orbegozo, John Doe #1, Marshall, Locke, Russell, Welch, John Doe #2, and Gravlin **SURVIVE** sua sponte review and require a response; and it is further

**ORDERED** that all remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[16] and it is further

**ORDERED** that the Clerk **TERMINATE** Uhler, Soucia, Veneske, Brunson, Mallette, Lamica, Gibson, and Gadway as defendants in this action; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the complaint, Preliminary Injunction Motion (Dkt. No. 2), First Supplemental Complaint (Dkt. No. 7), Second Supplemental Complaint (Dkt. No. 8), Third Supplemental Complaint (Dkt. No. 10), First Letter in Support of Request for Injunctive Relief (Dkt. No. 9), Second Letter in Support of Request for Injunctive Relief (Dkt. No. 11), and Third Letter in Support of Request for Injunctive Relief (Dkt. No. 12), to the United States Marshal for service upon defendants Orbegozo, Marshall, Locke, Russell, Welch, and Gravlin.[17]  The Clerk shall forward a copy of the summons and complaint to the Office of the New York State Attorney General, together

---

[16]  Should plaintiff seek to pursue any of the claims dismissed without prejudice, including any claim dismissed against a terminated defendant, he must file an amended complaint.  Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised.  Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.  Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

[17]  Summonses will not issue for the "Doe" defendants because the U.S. Marshal cannot effect service on an individual who has not been identified by name.

33

with a copy of this Decision and Order, the Preliminary Injunction Motion (Dkt. No. 2), and the supplemental submissions (Dkt. Nos. 7, 8, 9, 10, 11, 12); and it is further

ORDERED that a response to the complaint be filed by defendants Orbegozo, Marshall, Locke, Russell, Welch, and Gravlin, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

ORDERED that a response to plaintiff's requests for injunctive relief (Dkt. Nos. 2, 7, 9, 11, 12) be filed by defendants Orbegozo, Marshall, Locke, Russell, Welch, and Gravlin, or their counsel, within thirty (30) days of the date of service of the summons and complaint on any defendant; and it is further

ORDERED that plaintiff take reasonable steps to ascertain the identity of the "Doe" defendants and, when identified, seek to amend the complaint to add the individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a); and it is further

ORDERED that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: September 14, 2021
        Albany, NY

Mae A. D'Agostino
U.S. District Judge