**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JAY BRADSHAW,

                        Plaintiff,

                                                        9:21-CV-0826
            v.                                          (MAD/CFH)

ERIC MARSHAL, et al.,

                        Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

JAY BRADSHAW
08-A-3654
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. LETITIA JAMES                    MATTHEW J. GALLAGHER, ESQ.
New York State Attorney General       Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224


**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

                    **REPORT-RECOMMENDATION AND ORDER**

**I.      INTRODUCTION**

        Pro se plaintiff Jay Bradshaw commenced this action by filing a complaint asserting

claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to

proceed in forma pauperis ("IFP"), and a motion for preliminary injunctive relief.  Dkt. No. 1

("Compl."); Dkt. No. 4 ("IFP Application"); Dkt. No. 2 ("First Preliminary Injunction Motion").

After this action was initiated, plaintiff filed several documents in support of his request for injunctive relief.  *See* Dkt. Nos. 7, 9, 11, 12.

By Decision and Order entered on September 14, 2021, the Honorable Mae A. D'Agostino granted plaintiff's IFP Application in accordance with 28 U.S.C. § 1915(g), and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed several claims and defendants from this action, and found that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Orbegozo, John Doe #1, Marshall, Locke, Russell, Welch, John Doe #2, and Gravlin survived sua sponte review and required a response.  Dkt. No. 13 ("September 2021 Order").  Judge D'Agostino also directed that a response to plaintiff's requests for injunctive relief (Dkt. Nos. 2, 7, 9, 11, 12) be filed by defendants Orbegozo, Marshall, Locke, Russell, Welch, and Gravlin, or their counsel, within thirty (30) days of service on any defendant.  *Id*. at 34.[1]

Presently before the Court are the following: (1) defendants' motion to revoke plaintiff's IFP status, which plaintiff has opposed, *see* Dkt. Nos. 53, 59[2]; and (2) plaintiff's two motions to supplement his complaint, which counsel opposed, *see* Dkt. Nos. 19, 24, 31.[3]

---

[1]  As of the date of the September 2021 Order, plaintiff had four other actions pending in this District based on events that occurred between May and August, 2021.  *See Bradshaw v. Gordon*, No. 21-CV-0645 (N.D.N.Y. filed June 3, 2021) ("*Bradshaw v. Gordon*"); *Bradshaw v. Uhler*, No. 21-CV-0776 (N.D.N.Y. filed July 8, 2021) ("*Bradshaw v. Uhler*"); *Bradshaw v. Annucci*, No. 21-CV-0901 (N.D.N.Y. filed Aug. 11, 2021) ("*Bradshaw v. Annucci*"); *Bradshaw v. Brand*, No. 21-CV-0942 (N.D.N.Y. filed Aug. 20, 2021) ("*Bradshaw v. Brand*").  Following the September 2021 Order, one of those actions was dismissed, *see Bradshaw v. Brand*, Dkt. No. 6, and plaintiff's IFP status was revoked in two of the other actions, *see Bradshaw v. Gordon*, Dkt. No. 67; *Bradshaw v. Uhler*, Dkt. No. 72.  In addition, plaintiff commenced another new action, which is based on events that occurred on January 30, 2022.  *See Bradshaw v. Bishop*, No. 22-CV-0094 (N.D.N.Y. filed Feb. 2, 2022) ("*Bradshaw v. Bishop*").

[2]  Although not expressly discussed by defendants, their motion effectively seeks conditional dismissal of plaintiff's complaint unless and until he pays the filing fee for this action.

[3]  By Decision and Order entered on December 8, 2021, Judge D'Agostino denied numerous requests for injunctive relief filed by plaintiff following the September 2021 Order.  Dkt. No. 44 ("December 2021 Order").  Thereafter, plaintiff filed another motion for injunctive, Dkt. No. 58, which was denied on March 4, 2022.  *See*

## II.    MOTION TO REVOKE PLAINTIFF'S IFP STATUS[4]

### A.    Overview of the Complaint

Generally speaking, and as relevant to defendants' revocation motion, plaintiff's complaint alleges that he was assaulted by corrections officials on four separate occasions on July 12, 2021, and threatened with additional harm by certain of these officials.  *See* Compl. at 1-3.

### B.    Initial Determination of Imminent Danger

Prior to commencing this action, plaintiff had filed at least twenty-one other civil actions in the district courts in the Second Circuit since 2008.  *See* September 2021 Order at 3.  In at least four of those actions, plaintiff acquired "strikes" as defined in 28 U.S.C. § 1915(g) ("Section 1915(g)").[5]  *Id*. at 4 n.5.  Notwithstanding this determination, plaintiff's IFP Application was granted based on Judge D'Agostino's determination that the allegations in the complaint were sufficient to "plausibly suggest that plaintiff [was] 'under imminent danger of serious physical injury' when he signed his complaint on July 19, 2021."  *Id*. at 8 (citation omitted).

### C.    Overview of Defendants' Motion and Plaintiff's Response

---

Dkt. No. 63 ("March 2022 Order").  The procedural history of this case is detailed more fully in those Orders, and will not be restated herein.

[4]  Plaintiff has been provided with any unpublished cases that have been cited in this Report-Recommendation & Order.

[5]  The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16. 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact").

Defendants argue that plaintiff's IFP status should be revoked because he did not face "imminent danger" when he submitted his complaint for filing. *See generally*, Dkt. No. 53-9. In support of this position, defendants have adduced record evidence, including sworn statements, prison records related to the use-of-force incidents at issue, and plaintiff's medical records. *See* Dkt. No. 53-2; Dkt. No. 53-3; Dkt. No. 53-4; Dkt. No. 53-5; Dkt. No. 53-6; Dkt. No. 53-7; Dkt. No. 53-8; Dkt. No. 54. Defendants acknowledge, through these materials, that force was used against plaintiff by certain officials on July 12, 2021. *See, e.g.*, Dkt. No. 53-4, ¶¶ 11-15; Dkt. No. 53-6, ¶¶ 15-19; Dkt. No. 53-7, ¶¶ 11-13. Defendants, however, deny that the force used against plaintiff was excessive, deny that force was used against plaintiff at all during his transport to an outside hospital, and deny that plaintiff was threatened by any officials with future harm. *See* Dkt. No. 53-3, ¶¶ 8-9; Dkt. No. 53-4, ¶¶ 11-15; Dkt. No. 53-5, ¶¶ 19-20; Dkt. No. 53-6, ¶¶ 14-19; Dkt. No. 53-7, ¶¶ 11-13; Dkt. No. 53-8, ¶¶ 6-15.

In his response to defendants' motion to revoke his IFP status, plaintiff has submitted a sworn statement wherein he (1) disputes certain factual information contained in defendants' affidavits, including the statements regarding the events that precipitated the first use-of-force incident on July 12, 2021, and the details surrounding the force used against him on that date; (2) details the threats of future harm that he received; and (3) details incidents of wrongdoing involving certain named defendants both before and after July 12, 2021. *See generally*, Dkt. No. 59. Plaintiff also submitted certain exhibits with his response. *Id*. at 19-25.

**D.    Relevant Legal Standard**

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the

4

plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the

Court's filing fee of four hundred and two dollars ($402.00).[6]   The Court must also determine

whether the "three strikes" provision of Section 1915(g) bars the plaintiff from proceeding IFP

and without prepayment of the filing fee.[7]   More specifically, Section 1915(g) provides as

follows:

> In no event shall a prisoner bring a civil action or appeal a judgment
> in a civil action or proceeding under this section if the prisoner has,
> on 3 or more prior occasions, while incarcerated or detained in any
> facility, brought an action or appeal in a court of the United States
> that was dismissed on the grounds that it is frivolous, malicious, or
> fails to state a claim upon which relief may be granted, unless the
> prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The "imminent danger" exception protects a prison inmate exposed to potential

"serious physical injury" from the consequences of his earlier mistakes in filing frivolous

litigation.  Congress enacted the imminent danger exception contained in the final phrase of

§ 1915(g) as a "safety valve" to prevent impending harms to prisoners otherwise barred from

proceeding in forma pauperis.  *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002).  "[F]or a

prisoner to qualify for the imminent danger exception, the danger must be present when he

files his complaint–in other words, a three-strikes litigant is not excepted from the filing fee if

---

[6]  "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee . . . at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[7]  The manifest intent of Congress in enacting Section 1915(g) was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates.  *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007).  The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the court to determine as a matter of law.  *Tafari*, 473 F.3d at 442-43.

he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (citation omitted); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007) (imminent danger claims must be evaluated at the time the complaint is filed, rather than at the time of the events alleged).  In addition, "§ 1915(g) allows a three-strikes litigant to proceed [in forma pauperis] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296.  In deciding whether such a nexus exists, the Second Circuit instructs the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would *redress* that injury."  *Id*. at 298-99.  Both requirements must be met in order for the three-strikes litigant to proceed in forma pauperis.  *Id*.

Generally speaking, the allegations relevant to the imminent danger inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010).  Although the Second Circuit has cautioned against "an overly detailed inquiry into whether the allegations qualify for the exception," *id*. at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)), when a defendant challenges a prisoner's claim of imminent danger, a district court may "reexamine" its provisional determination of imminent danger and "conduct a narrow evidentiary inquiry into the prisoner-litigant's fear of imminent danger" at the time of filing.  *Shepherd v. Annucci*, 921 F.3d 89, 94-95 (2d Cir. 2019).  If the evidentiary submissions show the plaintiff's explanation for why he was in imminent danger to be "ridiculous," "conclusory," or "without foundation[,]" the district court may revoke the plaintiff's

6

previously granted IFP status. *Id*. at 95, 97; *see also Chavis*, 618 F.3d at 170 ("A court may find that a complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.'") (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)); *Nelson v. Nesmith*, No. 9:06-CV-1177 (TJM/DEP), 2008 WL 3836387, at *5 (N.D.N.Y. Aug. 13, 2008) ("The imminent danger claimed by the inmate . . . must be real, and not merely speculative or hypothetical."); *accord, Welch v. Selsky*, No. 9:06-CV-0812 (LEK/DEP), 2008 WL 238553, at *5 (N.D.N.Y. Jan 28, 2008).

### E.    Analysis

Defendants argue that plaintiff did not face an imminent risk of serious physical harm at the time he filed his complaint in this action because (1) "[a]ny force used on Plaintiff was the result of his own actions or nonfeasance," (2) "any threat of 'harm' was of Plaintiff's own making," (3) "[t]here were no further allegations of assault between July 12, 2021 and the time Plaintiff signed and filed his Complaint in this action," (4) "there were no further allegations [in plaintiff's supplemental pleadings] of assault through August 2021," and (5) the record evidence adduced in support of motions to revoke plaintiff's IFP status in two of his other cases shows that plaintiff had not been subjected to an ongoing pattern of harm leading up to the events of July 12, 2021.  *See* Dkt. No. 53-9 at 12-18.

As an initial matter, although defendants deny that force was used against plaintiff when he was in a transport vehicle on his way to an outside hospital and contend that the force used against him on other occasions was necessary and not excessive, plaintiff's affidavit is sufficiently specific for a reasonable factfinder to reach a different conclusion.  For example, with respect to the first use-of-force incident, plaintiff states that he was restrained by handcuffs attached to a waist restraint when defendant Orbegozo directed him to face a

stairwell wall while en route to his cell, after which point defendant Orbegozo applied force to his back, causing his head to hit the wall, and then "slammed [him] to the floor." Dkt. No. 59, ¶ 23.[8] With respect to the second use-of-force incident, plaintiff states that defendant Locke pulled him by the handcuffs toward his cell, causing him to fall, and defendants Locke and McCargar responded by forcing him into his cell, where he was punched and kicked "several times" by these officials and defendant Marshall, and sexually assaulted with a foreign object. *Id.*, ¶¶ 27-30. With respect to the third use-of-force incident, plaintiff states that defendant Russell grabbed him from behind while he was handcuffed and facing the wall outside of his cell, and "slammed" him to the ground on his stomach, in the presence of defendant Marshall and Corrections Officer Olsen. *Id.*, ¶¶ 32-34.[9]

In addition, a reasonable factfinder could conclude from plaintiff's medical records and referral to an outside hospital that he suffered a serious physical injury as a result of the use-of-force incidents that occurred on July 12, 2021. *See* Dkt. No. 54; Dkt. No. 59 at 22.

Furthermore, while the parties agree that plaintiff was not subjected to any additional physical harm between July 13 and 19, 2021, which is presumed to be the date he submitted

---

[8] Defendant Orbegozo acknowledges using force against plaintiff, but contends that the use-of-force was necessary. Specifically, defendant Orbegozo states that he gave plaintiff a "direct order" to "walk back to his cell[,]" and plaintiff "refused" to comply and "fought back against [defendant Orbegozo's] attempt to lead him back toward his cell[,]" and thus "force was necessary to get Plaintiff to comply." Dkt. No. 53-6, ¶¶ 14-15. Defendant Orbegozo's affidavit does not, however, describe how plaintiff -- handcuffed to a waist chain -- "fought back" against defendant Orbegozo's efforts to "lead" him back to his cell after allegedly refusing a direct order to walk, or why it was necessary to "force[ ] Plaintiff to the floor with assistance from other officers" in order to lead plaintiff back to his cell, as he states. *See* Dkt. No. 53-6, ¶¶ 14-15.

[9] Plaintiff has adduced evidence showing that he requested video recordings of various areas of Upstate Correctional Facility on July 12, 2021. *See* Dkt. No. 59 at 20-21, 23-25. It would seem that at least video footage exists of the outside of plaintiff's cell -- where the second and third use-of-force incidents occurred -- as such footage on different dates around this time was produced as part of the evidentiary record on the motions to revoke plaintiff's IFP status in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*. *See, e.g., Bradshaw v. Gordon*, Dkt. No. 53. In light of the competing affidavits adduced by the parties, such footage would certainly be informative.

his complaint for filing,[10] plaintiff's affidavit details specific threats of future harm that were made to him on July 12, 2021.  More specifically, plaintiff states that during the second use-of-force incident, defendant Marshall stated, while inside of plaintiff's cell, "[w]e are going to whip your ass in this cell every time we feel like it, do you see how far the cameras are from your cell[?] Who you think will be believed?"  Dkt. No. 59, ¶ 29.  Plaintiff also states that defendant Gravlin advised him that he would be assaulted while en route to the hospital, and defendants Welch and John Doe #2 -- now identified by plaintiff as Corrections Officer Miller -- threatened to "hurt" plaintiff on the ride back to the facility while at the hospital.  *Id*. ¶¶ 38, 41.

In addition to these purported threats, the circumstances leading up to and surrounding at least the first, second, and third use-of-force incidents, as detailed in plaintiff's affidavit, plausibly suggest that certain officials may have wished to cause him physical harm before any force was even used against him.  For example, plaintiff's affidavit indicates that a short time before force was first used against him on July 12, 2021, defendant Orbegozo, who weighs approximately 250 pounds, "intentionally and deliberately" "collided" his body into plaintiff, who weighs approximately 160 pounds, while escorting plaintiff from his cell to a disciplinary hearing.  Dkt. No. 59, ¶¶ 17-20.  According to plaintiff, he was shackled during the escort, and defendant Orbegozo refused to stop "colliding" into him despite his complaints.  *Id*., ¶¶ 16-20.[11]  Plaintiff further states that defendant Orbegozo's conduct was

---

[10]  *See* September 2021 Order at 7-8.

[11]  Defendant Orbegozo does not deny that there was contact between him and plaintiff during the escort.  Instead, defendant Orbegozo states in his affidavit that plaintiff "bumped" into him during the escort "in an effort to evade [his] escort."  Dkt. No. 53-6, ¶10.  Defendant Orbegozo further states that he "knew this to be [plaintiff's] general practice" as a result of "previous experience with Plaintiff[,]" and "allowed [plaintiff] to walk freely . . . to avoid escalation."  *Id*.  Defendant Orbegozo's affidavit does not, however, describe his "previous experience" with plaintiff, or how any such experience(s) informed him that plaintiff has a "general practice" of

witnessed by defendant Marshall and Corrections Captain Vesneske, and their refusal to address the conduct is why he directed vulgar statements at them, which ultimately led to an order that he be returned to his cell.  *Id.*, ¶¶ 20-21.[12]

Plaintiff's affidavit also states that defendant Orbegozo used unnecessary force against him on May 6, 2021, defendant Marshall plotted an attack against him "under the guise of a[n] [unnecessary cell] search" on June 11, 2021, and two non-party officials assaulted him on July 1, 2021.  *See* Dkt. No. 59, ¶¶ 9, 13-14.

In light of the foregoing, a reasonable factfinder could conclude that plaintiff continued to face an imminent risk of serious physical harm when he submitted his complaint for filing. Indeed, the facts presented by plaintiff are not remarkably different from the facts presented by the plaintiff in *Chavis v. Chappius*, where the Second Circuit held that "allegation[s] of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, [were] clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception."  618 F.3d at 170.[13]

Accordingly, the Court recommends that defendants' motion to revoke plaintiff's IFP status be denied.[14]

_____

bumping into corrections officials.

[12] According to plaintiff, the first use-of-force incident occurred moments later, the second use-of-force incident occurred outside of his cell shortly thereafter, and the third use-of-force incident occurred only a few hours later.  Dkt. No. 59, ¶¶ 23-34.  Plaintiff also states that he was handcuffed during each of these incidents. *Id.*, ¶¶ 16, 27-28, 33.

[13] In *Chavis*, the alleged "beating" occurred on July 17, 2006, the alleged subsequent threats occurred after this date and before September 21, 2006, and plaintiff's pleading was dated October 30, 2006.  *See Chavis v. Chappius*, No. 06-CV-0543, Dkt. No. 5 (W.D.N.Y. filed Nov. 8, 2006).

[14] Insofar as defendants contend that their motion should be granted because there is no evidence showing that plaintiff experienced physical harm in the days and weeks following his commencement of this action, the absence of such evidence is irrelevant to the Court's imminent danger analysis, which focuses on the plaintiff's status at the time of filing.

### III.    MOTIONS TO SUPPLEMENT

#### A.    Relevant Legal Standard

Rule 15(d) of the Federal Rules of Civil Procedure allows a party, "[o]n motion and reasonable notice, . . . to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  A party may supplement to include subsequent occurrences "absent prejudice to the nonmoving party."  *Albrecht v. Long Island R.R.*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991).  "It is also proper to permit the filing of a supplemental pleading to add additional parties."  *Tobin v. Rell*, No. 3:05-CV-1079, 2007 WL 1520111, at *2 (D. Conn. May 18, 2007) (citing *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 227 (1964)).

The standard for a motion to supplement is the same as for a motion to amend the pleadings under Fed. R. Civ. P. 15(a).  *See Klos v. Haskell*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993), *adopted by* 835 F. Supp. at 713 (W.D.N.Y. 1993).  Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).  The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F. 3d 208, 212-13 (2d Cir. 2011) (citation omitted).  The decision to grant or deny a motion to amend or supplement is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion.  *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001).

#### B.    Overview of the Proposed Supplemental Pleadings

Plaintiff's proposed supplemental complaint dated October 11, 2021, names two

11

Inmate Grievance Program ("IGP") Supervisors at Upstate Correctional Facility as defendants, and also asserts allegations of wrongdoing against Donald Uhler, the Superintendent of Upstate Correctional Facility, who was previously a defendant in this case. *See generally*, Dkt. No. 19-2. The proposed pleading alleges that the IGP Supervisors failed to properly file or process at least fourteen grievances submitted by plaintiff between August and September 2021, and Superintendent Uhler separately failed to address several grievances submitted during this time that were forwarded to him for investigation. *Id*.

Plaintiff's proposed supplemental complaint dated October 26, 2021, identifies additional grievances that he submitted, which allegedly have not been properly filed, processed, or investigated by the two IGP Supervisors at Upstate Correctional Facility and Superintendent Uhler. *See generally* Dkt. No. 24-1 at 1-4.

Based on these allegations, plaintiff's proposed supplemental pleadings assert Fourteenth Amendment due process claims against the two IGP Supervisors at Upstate Correctional Facility and Superintendent Uhler.

### C.    Analysis

The law is well-settled that an inmate does not have a constitutional right to an investigation into wrongdoing, or use of the state-created grievance process. *See Shell v. Brzeniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim."); *DeShaney v. Winnebego Soc. Servs*., 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not

12

deprive the individual."); *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at

*9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate

constitutional claim of 'failure to investigate,' the law is . . . clear that inmates do not enjoy a

constitutional right to an investigation of any kind by government officials.") (citing *Bernstein*

*v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *Torres v.*

*Mazzurca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003) (Inmates do not have a due process

right to a thorough investigation of grievances).  Thus, "complaints that prison officials

tampered with, failed to investigate, or improperly processed grievances, without more, do

not give rise to liability under § 1983."  *Celestin v. Premo*, No. 9:12-CV-0301 (GLS/RFT),

2014 WL 272443, at *3 (N.D.N.Y. Jan. 24, 2014) (citing *Irvis v. Seally*, No. 9:09-CV-0543

(GLS/ATB), 2011 WL 454792, at * 2 (N.D.N.Y. Feb. 4, 2011) ("[R]egardless of whether and

to what extent defendants followed their grievance procedures in investigating or failing to

investigate [plaintiff's] complaints, his claims must fail as a matter of law as they are not

actionable under § 1983.")); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3

(S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the

Constitution" and therefore failure to see to it that grievances are properly processed does

not create a claim under Section 1983).  Furthermore, the failure to process a grievance

and/or conduct a satisfactory investigation related to alleged wrongdoing that is not ongoing

does not, without more, plausibly suggest personal involvement in the alleged wrongdoing.

*See, e.g., Gomez v. Sepiol*, No. 11-CV-1017SR (MAT), 2014 WL 1575872, at *10 (W.D.N.Y.

Apr. 11, 2014) ("[T]he investigation of a grievance alone, is not sufficient to allege personal

involvement in the underlying constitutional violation."); *Jordan v. Fischer*, 773 F. Supp. 2d

255, 279 (N.D.N.Y. Feb. 17, 2011) (Sharpe, J., *adopting report and recommendation by*

13

Baxter, M.J.) ("[A] defendant's failure to properly investigate a grievance does not rise to the level of either personal involvement in the assault, nor does it state a separate constitutional claim."); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 649 (W.D.N.Y. 2010) (holding that the plaintiff failed to adequately plead the defendant's personal involvement based on allegations that the defendant investigated the plaintiff's grievance and concluded that there was no evidence that the other defendants had retaliated against the plaintiff).

Simply put, plaintiff's proposed supplemental pleadings fail to adequately state a cognizable Section 1983 claim against the two IGP Supervisors at Upstate Correctional Facility and Superintendent Uhler.  Thus, the Court recommends that plaintiff's motions to supplement his pleading be denied as futile.

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that defendants' motion to revoke plaintiff's IFP status (Dkt. No. 53) and conditionally dismiss the complaint as supplemented be **DENIED**; and it is

**ORDERED**, that plaintiff's motions to supplement his complaint (Dkt. Nos. 19, 24) are **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation & Order on the parties.

**IT IS SO ORDERED.**

> Pursuant to 28 U.S.C. § 636(b)(1), parties have FOURTEEN (14) days within which to file written objections to the foregoing recommendation. Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS RECOMMENDATION WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health*

*and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cɪᴠ. P. 72 & 6(a).[15]

Dated:  March 11, 2022

       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[15]   If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  Fᴇᴅ. R. Cɪᴠ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).