UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAY BRADSHAW,

                Plaintiff,

      v.                                              9:21-CV-0826
                                                          (MAD/CFH)

ERIC MARSHAL, et al.,

                Defendants.

---

APPEARANCES:

JAY BRADSHAW
08-A-3654
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. LETITIA JAMES                          MATTHEW J. GALLAGHER, ESQ.
New York State Attorney General        Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224


MAE A. D'AGOSTINO
United States District Judge

## DECISION AND ORDER

**I.    INTRODUCTION**

Pro se plaintiff Jay Bradshaw commenced this action by filing a complaint asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"), and a motion for preliminary injunctive relief. Dkt. No. 1 ("Compl."); Dkt. No. 4 ("IFP Application"); Dkt. No. 2 ("First Preliminary Injunction Motion"). After this

action was initiated, plaintiff filed several documents in support of his request for injunctive relief. *See* Dkt. Nos. 7, 9, 11, 12.

By Decision and Order entered on September 14, 2021, this Court granted plaintiff's IFP Application in accordance with 28 U.S.C. § 1915(g), and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed several claims and defendants from this action, and found that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Orbegozo, John Doe #1, Marshall, Locke, Russell, Welch, John Doe #2, and Gravlin survived sua sponte review and required a response. Dkt. No. 13 ("September 2021 Order"). The Court also directed that a response to plaintiff's requests for injunctive relief (Dkt. Nos. 2, 7, 9, 11, 12) be filed by defendants Orbegozo, Marshall, Locke, Russell, Welch, and Gravlin, or their counsel, within thirty (30) days of service on any defendant. *Id*. at 34.[1]

By Decision and Order entered on December 8, 2021, the Court denied plaintiff's numerous requests for injunctive relief, including several requests filed after the September 2021 Order. Dkt. No. 44 ("December 2021 Order"). Thereafter, plaintiff filed two motions to supplement his complaint, and defendants filed a motion to revoke his IFP status. Dkt. Nos. 19, 24 ("Motions to Supplement"); Dkt. No. 53 ("IFP Revocation Motion"). Before these motions were decided, plaintiff filed another motion for injunctive, Dkt. No. 58, which was

---

[1] As of the date of the September 2021 Order, plaintiff had four other actions pending in this District based on events that occurred between May and August, 2021. *See Bradshaw v. Gordon*, No. 21-CV-0645 (N.D.N.Y. filed June 3, 2021) ("*Bradshaw v. Gordon*"); *Bradshaw v. Uhler*, No. 21-CV-0776 (N.D.N.Y. filed July 8, 2021) ("*Bradshaw v. Uhler*"); *Bradshaw v. Annucci*, No. 21-CV-0901 (N.D.N.Y. filed Aug. 11, 2021) ("*Bradshaw v. Annucci*"); *Bradshaw v. Brand*, No. 21-CV-0942 (N.D.N.Y. filed Aug. 20, 2021) ("*Bradshaw v. Brand*"). Following the September 2021 Order, one of those actions was dismissed, *see Bradshaw v. Brand*, Dkt. No. 6, and plaintiff's IFP status was revoked in two of the other actions, *see Bradshaw v. Gordon*, Dkt. No. 67; *Bradshaw v. Uhler*, Dkt. No. 72. In addition, plaintiff commenced another new action, which is based on events that occurred on January 30, 2022. *See Bradshaw v. Bishop*, No. 22-CV-0094 (N.D.N.Y. filed Feb. 2, 2022) ("*Bradshaw v. Bishop*").

denied on March 4, 2022. *See* Dkt. No. 63 ("March 2022 Order").

By Report-Recommendation and Order entered on March 11, 2022, the Honorable Christian F. Hummel recommended that the IFP Revocation Motion be denied, and denied the Motions to Supplement. Dkt. No. 66 ("March 2022 Report-Recommendation and Order"). On April 15, 2022, this Court adopted the March 2022 Report-Recommendation and Order in its entirety. Dkt. No. 68.

Presently before the Court are the following: (1) plaintiff's motion to amend and proposed amended and supplemental complaint, Dkt. Nos. 70 ("Motion to Amend"), 76 ("Prop. Am. Compl."); and (2) plaintiff's renewed motion for injunctive relief, Dkt. No. 71 ("Renewed Preliminary Injunction Motion"). Defendants have opposed the Motion to Amend. *See* Dkt. No. 78.

## II.   PLAINTIFF'S MOTION TO AMEND

### A.   Legal Standard Governing Motions to Amend

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend its pleading "once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave[, and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

Rule 15(d) of the Federal Rules of Civil Procedure allows a party, "[o]n motion and reasonable notice, . . . to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed.

R. Civ. P. 15(d).  A party may supplement to include subsequent occurrences "absent prejudice to the nonmoving party."  *Albrecht v. Long Island R.R*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991).  "It is also proper to permit the filing of a supplemental pleading to add additional parties."  *Tobin v. Rell*, No. 3:05-CV-1079, 2007 WL 1520111, at *2 (D. Conn. May 18, 2007) (citing *Griffin v. County School Bd. of Prince Edward County*, 377 U.S. 218, 227 (1964)).

The standard for a motion to supplement is the same as for a motion to amend the pleadings under Fed. R. Civ. P. 15(a).  *Klos v. Haskell*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993) (Fisher, M.J.), *adopted by* 835 F. Supp. at 713 (W.D.N.Y. 1993) (Telesca, D.J.).  Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F. 3d 208, 212-13 (2d Cir. 2011) (citation omitted).

However, motions to amend or supplement "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *Monahan*, 214 F.3d at 283. An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).  The decision to grant or deny a motion to amend

or supplement is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion. *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001).

In the case of proposed amendments where new defendants are to be added, the Court must also look to Rule 21 of the Federal Rules of Civil Procedure, which states that a party may be added to an action "at any time, on just terms." Fed. R. Civ. P. 21. Addition of parties under Rule 21 is also guided by the same liberal standard as a motion to amend under Rule 15. *Fair Housing Development Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972).

### B. The Complaint and September 2021 Order

The original complaint asserted claims based on alleged events that occurred during plaintiff's incarceration at Upstate Correctional Facility ("Upstate C.F."). *See generally* Compl. The complaint was construed to assert the following claims: (1) Eighth Amendment excessive force and failure-to-intervene claims against Vesneske, Orbegozo, Marshall, Locke, John Doe #1, Russell, Gravlin, Welch, John Doe #2, Soucia, and Uhler; (2) Eighth Amendment harassment claims against Lamica, Gibson, Marshall, and Gadway; (3) Eighth Amendment conditions-of-confinement claims against Vesneske, Mallette, and Brunson based on denying plaintiff tablet privileges; (4) First Amendment retaliation claims against Vesneske, Mallette, and Brunson based on the revocation of plaintiff's tablet privileges; and (5) Fourteenth Amendment equal protection claims against Vesneske, Mallette, and Brunson based on the revocation of plaintiff's tablet privileges. *See* September 2021 Order at 17-18.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's Eighth Amendment excessive force and failure-to-intervene

claims against defendants Orbegozo, John Doe #1, Marshall, Locke, Russell, Welch, John Doe #2, and Gravlin based on alleged use-of-force incidents that occurred on July 12, 2021, were found to survive sua sponte review and require a response.  *See* September 2021 Order at 33.  All remaining claims were dismissed without prejudice for failure to state a claim upon which relief may be granted.  *Id*.

### C. Overview of the Proposed Amended Complaint

Plaintiff's proposed amended complaint is materially similar to the original complaint, with a few exceptions.  First, the proposed amended complaint identifies Corrections Officer Kilcoyne as defendant John Doe #1 and Corrections Officer Miller as defendant John Doe #2.  *See* Prop. Am. Compl. at 1-3.  Second, the proposed amended complaint asserts claims against proposed new (and previously dismissed) defendants based on their alleged role in the events of July 12, 2021.  *See id*. at 2-3.  Third, the proposed amended complaint asserts claims against proposed new (and previously dismissed) defendants based on alleged deprivations that occurred after July 12, 2021.  *Id.* at 3-5.

As is relevant to the Court's review herein, the following facts are set forth as alleged by plaintiff in the proposed amended complaint.

Between May 4 and June 11, 2021, plaintiff made "daily calls" to the New York State Department of Corrections and Community Supervision ("DOCCS") Inspector General's Office "regarding daily harassment and incidents of assault."  Prop. Am. Compl. at 4.  Plaintiff believes these calls were brought to the attention of the Watch Commander at Upstate C.F., Corrections Captain Vesneske.  *Id.*

On June 7, 2021, plaintiff submitted a grievance "relating to being assaulted by Orbegozo on May 6, 2021[,] assaulted by four officers on May 10, 2021[,] . . . assault[ed] by

6

an officer on May 12, 2021[,] and . . . [denied] meals by McCargar [and] Orbegozo from May 28, 2021 to June 5, 2021." Prop. Am. Compl. at 3. On June 27, 2021, plaintiff submitted a "grievance relating to harassment under the guise of a cell search by defendant Marshall on June 11, 2021[,] an assault by an officer on June 18, 2021[, and] an assault by an officer on June 24, 2021." *Id.* Upstate C.F. Superintendent Uhler and Deputy Superintendent of Security Bishop "either denied [these] grievances or did not respond[.]" *Id.* at 4.

On July 12, 2021, defendant Corrections Officer Orbegozo and Corrections Officer Kilcoyne (formerly John Doe #1) removed plaintiff from his cell, placed him in handcuffs, shackled the handcuffs to his waist, and escorted him out of his cell block area for a hearing. Prop. Am. Compl. at 2. While en route to the hearing room, defendant Orbegozo repeatedly "collided" into plaintiff. *Id.* During the escort, plaintiff encountered defendant Corrections Sergeant Marshall. *Id.* Plaintiff told defendant Marshall that defendant Orbegozo's actions may cause him to fall, but defendant Marshall ignored his complaints. *Id.*

Thereafter, plaintiff encountered Corrections Sergeant Vesneske. Prop. Am. Compl. at 2. Plaintiff complained to Vesneske about Orbegozo's actions, and Vesneske responded that he did not care and ordered that plaintiff be returned to his cell. *Id*. at 2. Orbegozo and Kilcoyne then escorted plaintiff back to his cell. *Id.* Marshall and Vesneske followed behind. *Id*.

While en route to plaintiff's cell, defendant Orbegozo applied force to plaintiff's back and "slammed" him to the floor. Prop. Am. Compl. at 2. Thereafter, plaintiff arrived on the floor where his cell was located, and he was handed off to defendant Locke and Corrections Officer McCargar. *Id.* at 3. These officials escorted plaintiff to his cell while Marshall and Vesneske followed. *Id.*

7

After arriving at plaintiff's cell, plaintiff was moved inside, where he was punched and kicked "several times" by Locke, McCargar, and Marshall. Prop. Am. Compl. at 3. Following the assault, plaintiff spoke with a nurse who "directed" that he be taken to the infirmary. *Id.* Thereafter, plaintiff was removed from his cell in handcuffs by defendant Corrections Officer Russell. *Id.* Before being shackled, plaintiff tied his shoes and attempted to fix the mask on his face, but was "slammed to the floor" by Russell. *Id.* Plaintiff was then brought to the infirmary and evaluated by medical staff, who referred him to an outside hospital. *Id.*

While awaiting transport to the outside hospital, defendant Corrections Captain Gravlin told plaintiff that the officials assigned to transport him, defendant Corrections Officer Welch and Corrections Officer Miller (formerly John Doe #2), planned to "beat" him. Prop. Am. Compl. at 3. Plaintiff was then placed in a transport vehicle. *Id.*

While en route to the hospital, defendant Welch punched and choked plaintiff several times, and Miller "poked [plaintiff] in the torso with his stick." Prop. Am. Compl. at 3.

On July 27, 2021, although plaintiff was "entitled to tablet privileges" based on his status as "PIMS level 2," Vesneske denied plaintiff access to a tablet. Prop. Am. Compl. at 4. Plaintiff filed "numerous grievances" about "being denied tablet privileges" between July 27, 2021 and April 4, 2022, which were denied by Uhler and Bishop. *Id.* At some point, the Central Office Review Committee "held" that plaintiff "should be afford[ed] tablet privileges on PIMS level 2 and 3." *Id.* The tablet contains "phone features" that allow plaintiff to "make daily call[s]" and "educational materials and game[s,]" which are "a means of therapy" for inmates confined in the special housing unit. *Id.* at 5.

At some point, plaintiff filed grievances requesting that corrections officials at Upstate C.F. be required to wear body cameras within the facility and for outside trips, which were

8

denied by DOCCS Commissioner Annucci. Prop. Am. Compl. at 5. Annucci also denied plaintiff's grievances "relating to excessive and retaliatory cell searches" that "were not being conducted pursuant to DOCCS' regulation[s]." *Id*.

Liberally construed, the proposed amended complaint re-asserts the Eighth Amendment claims that previously survived sua sponte review, and names McCargar and Vesneske as additional officials involved in the alleged wrongdoing on July 12, 2021.

The Court also liberally construes the proposed amended complaint to re-assert a First Amendment retaliation claim against Vesneske, which was previously dismissed without prejudice in the September 2021 Order, as well as First Amendment retaliation claims against Uhler and Bishop based on the denial of plaintiff's grievances related to tablet privileges, and against Orbegozo, McCargar, and Marshall based on their involvement in the events of July 12, 2021.

Lastly, the Court liberally construes the proposed amended complaint to assert Eighth Amendment claims against Uhler, Bishop, and Annucci based on the denial of grievances related to use-of-force incidents.

The proposed amended complaint seeks monetary damages and injunctive relief. *See* Prop. Am. Compl. at 5-6. For a more complete statement of plaintiff's claims, reference is made to the proposed amended complaint.

**D.    Analysis**

Counsel for the defendants argues that the Motion to Amend should be denied in its entirety because the motion was not accompanied by a memorandum of law or supporting affidavit, and the proposed amended complaint does not identify all proposed insertions and deletions, as required by the Local Rules of Practice for the Northern District of New York.

*See* Dkt. No. 78 at 6.  Counsel also argues, in the alternative, that the Motion to Amend should be denied on futility grounds insofar as the proposed amended complaint asserts new Section 1983 claims other than Eighth Amendment claims against McCargar, Kilcoyne, Vesneske, and Miller based on the alleged events that occurred on July 12, 2021.  *Id*. at 7-10.

      Although the Court agrees with counsel that the Motion to Amend and proposed amended complaint do not comply with the procedural requirements set forth in the Local Rules of Practice for this District, denying the Motion to Amend on this ground, at this stage of the proceeding, would not serve the interests of justice, and would instead simply invite the filing of another motion from plaintiff.  Accordingly, the Court declines to deny the Motion to Amend on procedural grounds.  The Court addresses the merits of the motion below.

### 1.  Proposed Claims Based on Events that Occurred on July 12, 2021

      Liberally construed, the proposed amended complaint re-asserts the Eighth Amendment claims that survived the Court's review of the original complaint, names Kilcoyne as a defendant in place of John Doe #1, names Miller as a defendant in place of John Doe #2, names Vesneske and McCargar as defendants based on their alleged roles in one or more of the alleged use-of-force incidents that occurred on July 12, 2021, and asserts First Amendment retaliation claims against Orbegozo, McCargar, and Marshall based on these officials allegedly engaging in wrongdoing on July 12, 2021, in response to grievances plaintiff filed against them.

      At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that these proposed claims are pled with

enough detail to withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, and for the reasons set forth in the September 2021 Order, plaintiff's Motion to Amend is granted insofar as plaintiff seeks to assert the aforementioned claims (and add Kilcoyne and Miller as defendants in place of John Doe #1 and John Doe #2).

### 2. Proposed Eighth Amendment Claims Based on Denial of Grievances

As noted, liberally construed, the proposed amended complaint asserts Eighth Amendment claims against Uhler, Bishop, and Annucci based on their denial of grievances related to use-of-force incidents.

#### (a) Uhler and Bishop

With respect to Uhler and Bishop, the proposed amended complaint alleges that plaintiff submitted grievances related to "assaults" he experienced before July 12, 2021, and these officials "either denied [these] grievances or did not respond" to them. Prop. Am. Compl. at 4.

As an initial matter, it is unclear why plaintiff alleges that these officials "either denied . . . or did not respond" to his grievances, as he would certainly know which of these scenarios occurred. In any event, the Second Circuit recently clarified that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Thus, in the context of an Eighth Amendment claim against a supervisory official, a plaintiff must establish that the supervisory official himself "acted with deliberate

11

indifference—meaning that [the official] personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety." *Id*. at 619 (internal quotation marks and citation omitted).

In light of the Second Circuit's ruling in *Tangreti*, the Court finds that denying or ignoring plaintiff's grievances related to past assaults is not enough to plausibly suggest that Uhler and Bishop were personally involved in the alleged wrongdoing that occurred on July 12, 2021. *See, e.g., Fabrizio v. Smith*, No. 9:20-CV-0011 (GTS/ML), 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) ("In the Complaint, Plaintiff alleged that Mauro and Smith were personally involved because they failed to remedy ongoing First Amendment violations after becoming aware of the retaliation through grievances and appeals. . . . Plaintiff attempts to couch Defendants' liability within the now-overruled scope of supervisory liability . . . . In light of Tangreti, Plaintiff's attempt to plead personal involvement based upon the denial of a grievance and/or appeals, lacks merit because it does not plausibly suggest '[t]he factors necessary to establish' a First Amendment retaliation claim."), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021).

The Court would add only that, even pre-*Tangreti*, personal involvement based on the denial of a grievance was only possibly where the alleged constitutional violation complained of in the grievance was "ongoing [...] such that the supervisory official who reviews the grievance can remedy [it] directly." *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Here, the proposed amended complaint lacks any allegations which plausibly suggest that the "assault" incidents identified by plaintiff in his grievances posed an ongoing risk of specific harm. Indeed, it is entirely unclear from the proposed amended complaint what details were provided in these grievances relative to the alleged assaults plaintiff experienced. Furthermore, the proposed

amended complaint does not articulate the reason(s) why plaintiff's grievances were denied. Thus, even under the more lenient pre-*Tangreti* standard, the proposed amended complaint is insufficient to plausibly suggest that Uhler and Bishop were personally involved in the alleged wrongdoing that occurred on July 12, 2021.

Accordingly, plaintiff's Motion to Amend is denied insofar as the proposed amended complaint asserts Eighth Amendment claims against Uhler and Bishop.

### (b) Annucci

With respect to Annucci, the proposed amended complaint alleges that plaintiff submitted grievances requesting that corrections officials at Upstate C.F. be required to wear body cameras within the facility and for outside trips, and prohibited from conducting "excessive and retaliatory cell searches[,]" which Annucci denied.  Prop. Am. Compl. at 5.

As an initial matter, there is no constitutional requirement that prison officials wear body cameras.  Nor is there a constitutional prohibition against cell searches.  *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell[.]").  Thus, DOCCS Commissioner Annucci did not violate plaintiff's constitutional rights in denying his grievances related to these issues.  Furthermore, the proposed amended complaint fails to plead any underlying wrongdoing that occurred after the alleged denial of these grievances, which plaintiff believes happened as a result of Annucci's inaction.  Yet the law was well-settled, even before *Tangreti*, that there must be an underlying constitutional violation in order for liability to attach to a supervisory official for failure to remedy ongoing harm.  *See Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014) ("Because we have held that there was no underlying constitutional violation, there is also no supervisory liability.").

Accordingly, the Motion to Amend is denied insofar as the proposed amended complaint asserts Section 1983 claims against DOCCS Commissioner Annucci.[2]

### 3. Proposed First Amendment Claims Based on Denial of Tablet Privileges

As noted, liberally construed, the proposed amended complaint asserts First Amendment retaliation claims based on Corrections Captain Vesneske denying plaintiff tablet privileges on and after July 27, 2021, and Superintendent Uhler and Deputy Superintendent of Security Bishop denying plaintiff's grievances related to Vesneske's actions.

As an initial matter, plaintiff alleges that he sought to utilize the tablet for its telephone feature and educational materials and games. However, there are no allegations in the proposed amended complaint that plaintiff was denied access to a telephone or library services on and after July 27, 2021. Thus, the proposed amended complaint fails to allege that plaintiff suffered an actual injury as a result of not receiving tablet services. *See, e.g., Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004) ("[A] plaintiff asserting First Amendment retaliation must allege some sort of harm. . . ."); *cf. Berry v. Tremblay*, No. 9:20-CV-177 (DNH/TWD), 2021 WL 1575951, at *4 (N.D.N.Y. Apr. 22, 2021) ("In this case, the charges against Plaintiff were dismissed after a hearing. . . . Thus, even construing Plaintiff's complaint liberally, there are no allegations that he suffered any adverse consequence in the form of lost privileges or restricted confinement because of the misbehavior report. He, therefore, cannot show and indeed has not alleged an adverse action from the issuance of the misbehavior report."), *report and recommendation adopted by* 2021 WL 2580100

---

[2] Even assuming the proposed amended complaint identified an underlying constitutional violation that allegedly occurred as a result of Annucci's inaction, in light of *Tangreti*, Annucci's denial of grievances alone would not plausibly suggest his personal involvement in the wrongdoing.

14

(N.D.N.Y. June 23, 2021); *Warren v. Goord*, No. 99-CV-0296, 2006 WL 1582385, at *15 (W.D.N.Y. May 26, 2006) (holding, where complaint was "devoid of any allegations that the transfer [of inmate plaintiff to infirmary], by itself, resulted in any additional deprivation of privileges as required to support a finding that Warren's transfer resulted in some cognizable injury to Warren's First Amendment rights," that transfer "d[id] not, as a matter of law, constitute action 'that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights,' and, thus, d[id] not provide the requisite 'adverse action' necessary to support the second prong of a First Amendment retaliation claim" (citation omitted)); *Ali v. Szabo*, 81 F. Supp. 2d 447, 467 (S.D.N.Y. 2000) (dismissing prisoner's retaliation claim where prisoner did not allege any injury as a result of defendant's action).[3]

    Furthermore, even if plaintiff could overcome this pleading deficiency, he is proceeding IFP in this action based on alleged imminent danger events that occurred on July 12, 2021. The denial of tablet privileges roughly two weeks later has nothing to do with plaintiff's imminent danger allegations. Thus, allowing plaintiff to proceed with his proposed supplemental claims would run afoul of the limitations set forth in 28 U.S.C. § 1915(g), and amount to an abuse of plaintiff's IFP privilege.[4] Conversely, denying plaintiff's proposed

---

[3] The proposed amended complaint also fails to provide the reason why plaintiff's grievances related to tablet privileges were denied.

[4] The law is well-settled in this Circuit that a "three strikes" litigant such as plaintiff may raise claims of past harm when his complaint satisfies the "imminent danger" requirement. *See Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010) (holding that when a "three strikes" plaintiff adequately alleges imminent danger on some claims, the action may proceed on any other claims contained in the same complaint, even though they may lack a nexus to imminent danger). With good reason, however, the Second Circuit has never held that a "three strikes" litigant may expand the scope of an action to include supplemental claims that do not satisfy the "imminent danger" requirement or relate to the wrongdoing alleged in the original complaint, as allowing this to occur would in essence render the statutory exception to the "three strikes" rule meaningless.

15

supplemental claims would not result in any legal prejudice to plaintiff because these claims could be raised in a separate action. *See Purcelle v. Thomas*, No. 9:18-CV-0077 (GLS/TWD), 2019 WL 1762628, at *3 (N.D.N.Y. Apr. 22, 2019) (denying motion to supplement where Plaintiff would suffer no apparent prejudice if the motion was denied because he could pursue the claims in his proposed supplemental complaint by commencing a new action).

In addition, allowing plaintiff to proceed with claims based on events that bear no relation to the imminent danger allegations and occurred after the filing date of the complaint would (1) expand the scope of discovery and potential motion practice, and (2) present the potential for jury confusion. *See Darowski v. Wojewoda*, No. 15-CV-0803, 2018 WL 2122822, at *2-3 (D. Conn. May 8, 2018) (denying the plaintiff's motion for leave to file an amended complaint based on, inter alia, the risk of confusion of issues given the unrelated nature of the original and newly proposed claims, and the fact that the plaintiff was free to commence a new action based on the new claims).

In light of the foregoing, plaintiff's Motion to Amend to assert Section 1983 claims against Vesneske, Uhler, and Bishop based on supplemental allegations of wrongdoing is denied.

### III.    RENEWED PRELIMINARY INJUNCTION MOTION

Plaintiff's Renewed Preliminary Injunction Motion seeks an order directing that (1) plaintiff be transferred to another facility, (2) Upstate C.F. officials discontinue retaliatory searches and assaults and denying him of tablet privileges, and (3) Upstate C.F. officials utilize recording devices when escorting plaintiff into or out of his cell. *See* Renewed

Preliminary Injunction Motion at 1.

In earlier motions for injunctive relief filed in this case, plaintiff previously requested orders directing that he be transferred to another facility, and that officials at Upstate C.F. discontinue threatening him and unlawfully assaulting him and engaging in retaliatory conduct. *See* Dkt. Nos. 2, 7, 9, 11, 12, 18, 25, 26, 29, 35. In the December 2021 Order, the Court denied these requests for injunctive relief for several reasons, including that plaintiff failed to establish a likelihood of (1) suffering imminent irreparable harm in the absence of the injunctive relief requested and/or (2) success on the merits of any claim based on events that occurred after July 12, 2021. *See* December 2021 Order at 7-11.

As was the situation when the Court decided the December 2021 Order, the only claims that remain in this action are based on alleged wrongdoing that occurred on July 12, 2021. In other words, no new claims are pending in this case that would warrant a different conclusion than the one reached by the Court in the December 2021 Order. Accordingly, and for the reasons set forth in the December 2021 Order, the Renewed Preliminary Injunction Motion is denied.

## IV.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Motion to Amend (Dkt. No. 70) is **GRANTED IN PART AND DENIED IN PART** as set forth above; and it is further

**ORDERED** that the following claims remain in this action: (1) plaintiff's First Amendment retaliation claims against defendants Orbegozo, Marshall, and McCargar; and (2) plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Orbegozo, Kilcoyne, Marshall, Locke, Russell, Welch, Miller, McCargar,

Vesneske, and Gravlin based on alleged use-of-force incidents that occurred on July 12, 2021; and it is further

**ORDERED** that the proposed amended complaint (Dkt. No. 76), **as modified herein**, will supersede and replace the previously filed complaint and will be the operative pleading. The Clerk is directed to docket the proposed amended complaint (Dkt. No. 76) as the amended complaint; and it is further

**ORDERED** that the Clerk is directed to update the docket as follows: (1) add Corrections Officer Kilcoyne as a defendant in place of John Doe #1; (2) add Corrections Officer Miller as a defendant in place of John Doe #2; (3) add Corrections Officer McCargar as a defendant; and (4) add Corrections Captain Vesneske as a defendant; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants Kilcoyne, Miller, McCargar, and Vesneske; and it is further

**ORDERED** that the deadline for the defendants who have appeared in this case to respond to the amended complaint is **STAYED** pending the completion of service on defendants Kilcoyne, Miller, McCargar, and Vesneske; and it is further

**ORDERED** that upon the completion of service on defendants Kilcoyne, Miller, McCargar, and Vesneske, a response to plaintiff's amended complaint be filed by all of the defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Renewed Preliminary Injunction Motion (Dkt. No. 71) is **DENIED**; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must

bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

      **ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated:  August 8, 2022
       Albany, NY

_____
Mae A. D'Agostino
U.S. District Judge