UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAY BRADSHAW,

                              Plaintiff,

        v.                                            9:21-CV-0826
                                                        (MAD/CFH)
ERIC MARSHAL, et al.,

                              Defendants.

---

APPEARANCES:

JAY BRADSHAW
08-A-3654
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. LETITIA JAMES                        MATTHEW J. GALLAGHER, ESQ.
New York State Attorney General         Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

MAE A. D'AGOSTINO
United States District Judge

**DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Jay Bradshaw, proceeding pro se in this 42 U.S.C. § 1983 ("Section 1983")

civil rights action, alleges wrongdoing while he was incarcerated at Upstate Correctional

Facility on or about July 12, 2021. Dkt. No. 83 ("Amended Complaint").[1] Defendants have

---

[1] By Decision and Order entered on August 8, 2022, this Court granted in part and denied in part a motion to amend and supplement filed by plaintiff, directed the Clerk to docket plaintiff's proposed amended
(continued...)

answered the Amended Complaint.  *See* Dkt. No. 104.[2]

Presently before the Court are the following: (1) a motion from plaintiff seeking injunctive relief based on an alleged use-of-force incident that occurred on December 12, 2022, Dkt. No. 100 ("December 2022 Request for Injunctive Relief"); and (2) a letter request from plaintiff that defendants produce video of alleged events that occurred on December 12, 2022, Dkt. No. 101 ("Letter Request for Video Evidence").[3]  Defendants have opposed plaintiff's motion and letter request, and plaintiff has submitted a reply to the opposition (without leave of the Court).  *See* Dkt. Nos. 103, 106.

## II. DISCUSSION

### A. Overview of the Claims Remaining in this Action and the Pending Motions

In light of the August 2022 Order, only the following claims remain in this action: (1) First Amendment retaliation claims against defendants Orbegozo, McCargar, and Marshall based on these officials allegedly subjecting plaintiff to excessive force on July 12, 2021, in response to grievances plaintiff filed against them; and (2) Eighth Amendment excessive force and failure-to-intervene claims against defendants Orbegozo, Kilcoyne, Marshall, Locke, Russell, Welch, Miller, Vesneske, McCargar, and Gravlin based on alleged

---

[1](...continued)
complaint as the amended complaint, and clarified that the scope of this action is limited to claims based on alleged events that occurred on July 12, 2021.  *See* Dkt. No. 82 ("August 2022 Order").  The procedural history leading up to the August 2022 Order was discussed at length in that Order, and will not be restated herein.

[2] Plaintiff currently has three other actions pending in this District.  *See Bradshaw v. Locke*, No. 19-CV-428 (N.D.N.Y. filed April 10, 2019); *Bradshaw v. Burns*, No. 19-CV-931 (N.D.N.Y. filed July 31, 2019); *Bradshaw v. Annucci*, No. 21-CV-0901 (N.D.N.Y. filed Aug. 11, 2021).

[3] In the August 2022 Order, the Court denied a motion for injunctive relief filed by plaintiff based on alleged events that occurred in and after February, 2022.  *See* August 2022 Order at 16-17.  Before that request for injunctive relief was decided, the Court had considered (and denied) ten earlier requests for injunctive relief seeking orders directing that plaintiff be transferred to another facility, and that officials at Upstate Correctional Facility discontinue threatening and unlawfully assaulting him and engaging in retaliatory conduct.  *See* Dkt. 44 ("December 2021 Order") (denying Nos. 2, 7, 9, 11, 12, 18, 25, 26, 29, 35).

use-of-force incidents that occurred on July 12, 2021.  *See generally*, August 2022 Order.

In his request for injunctive relief, plaintiff seeks an order (1) enjoining defendant Gravlin from (i) "tacitly approving or turning a blind eye" to corrections officers subjecting him to "unnecessary and excessive force[,]" including in retaliation for his engagement in protected activity, and (ii) assigning corrections officials who have assaulted plaintiff in the past to "a post where they may engage plaintiff[,]" and (2) directing that plaintiff be transferred to another correctional facility.  Dkt. No. 100 at 1.  Plaintiff seeks this relief based on the following facts set forth in his motion papers.

On December 12, 2022, plaintiff was "brought to a double-bunk cell with a prisoner who attacked his cellmate immediately before [plaintiff] was placed in the cell[.]"  Dkt. No. 100 at 2, ¶ 3.  Before plaintiff was placed in this cell, Corrections Officer Osborn, who is not a party in this action, told plaintiff to "get ready" because he was "coming into the cell to get [plaintiff]."  *Id*., ¶ 4.  Plaintiff advised a non-party corrections sergeant, a non-party corrections lieutenant, and defendant Gravlin about Osborn's threat, but he was "mocked and disregarded."  *Id*.  Defendant Gravlin "directed [plaintiff] to exit [his] cell for a cell search," but he was instead "relocated to another cell."  *Id*.

While en route to plaintiff's new cell, Osborn and Corrections Officer Carter, another non-party official, told plaintiff that he would be assaulted by his new cellmate, and that these officials would then enter the cell to assault him further.  Dkt. No. 100 at 2, ¶ 5.  Thereafter, plaintiff was placed in his new cell and assaulted by "Inmate P[.]"  *Id*., ¶ 6.

Following the assault, Osborn and Carter entered the cell and assaulted plaintiff further.  Dkt. No. 100 at 2, ¶¶ 7-8.  Plaintiff was then "brought to the infirmary" for treatment related to his injuries, after which time he was relocated to a new cell.  *Id*., ¶¶ 11-12.

According to plaintiff, defendant Gravlin, as the Acting Deputy Superintendent of Security, is responsible for the actions of "his officers at Upstate[,]" and has "remained deliberately indifferent to [plaintiff's] safety" by continuing to place him in a "double-bunk cell with prisoners who are more likely than not to attack [plaintiff.]" Dkt. No. 100 at 2, ¶¶ 13-14.[4]

Plaintiff's Letter Request for Video Evidence seeks a copy of the vide footage showing the use-of-force incidents described in the December 2022 Request for Injunctive Relief.

**B.     Analysis**

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)).  However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher.  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)).  A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal

---

[4] Plaintiff was transferred from Upstate Correctional Facility to Lakeview Shock Incarceration Correctional Facility on or about September 16, 2022. *See Bradshaw v. Burns*, No. 19-CV-931, Dkt. No. 106. Plaintiff remained at that correctional facility until at least December 5, 2022. *Id.*, Dkt. No. 110.

4

quotation marks omitted)); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted).

      As noted, plaintiff's preliminary injunction motion seeks an order (1) directing officials at Upstate Correctional Facility to discontinue subjecting him to physical attacks and retaliatory misconduct, and (2) transferring him to another facility, i.e., an order that alters the status quo. *See* Dkt. No. 100 at 1. Defendants argue that plaintiff's motion should be denied because (1) plaintiff has not put forward proof establishing that he faces a risk of suffering irreparable harm if his requested relief is not granted, (2) plaintiff "has not shown that the instant allegations in his motion are related to the excessive force and failure-to-protect allegations in the underlying complaint[,]" (3) the Court does not have jurisdiction over all parties against whom plaintiff seeks injunctive relief, and (4) the relief sought is essentially an "obey the law" injunction. Dkt. No. 103. For several reasons, the Court agrees that plaintiff's motion must be denied.

      First, as noted, the claims that remain in this action are based on alleged use-of-force incidents involving corrections officials on July 12, 2021. These claims have nothing to do with plaintiff's placement in a double-bunk cell and/or being assaulted by corrections officials

roughly seventeen months later. Stated differently, there is currently no controversy before this Court regarding officials exposing plaintiff to a risk of harm by assaulting him, or placing him in a double-cell with inmates who wished to harm him, in late 2022, which is a prerequisite to considering the merits of the request for preliminary injunctive relief. *See Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198-99 (2d Cir. 1985) ("Only after an action has been commenced can preliminary injunctive relief be obtained. . . . Herein, Stewart filed a complaint in the district court in October, 1983, alleging discrimination in employment based on conduct of the type asserted in his 1980 EEOC claims, and thereby commenced an action pertaining to the then alleged discriminatory conduct. His July, 1984 motion for preliminary injunctive relief, claiming discrimination and retaliation based on his suspension without pay in May, 1984, presents issues which are entirely different from those which were alleged in his original complaint. Since Stewart neither filed a separate complaint in the district court relating to his suspension without pay and based upon his MSPB action, . . . nor sought to avail himself of the liberal rules which would have allowed for the amendment of his original October, 1983 complaint, we hold that no jurisdictional basis existed upon which the district court herein could have issued its preliminary injunctive relief."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("It is self-evident that Devose's motion for temporary relief has nothing to do with preserving the district court's decision-making power over the merits of Devose's [Section] 1983 lawsuit. To the contrary, Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit."); *Omega World Travel, Inc. v. Trans World Airlines*, 111

F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."); *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir.2010) (the plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint); *Davidson v. Scully*, 914 F. Supp. 1011, 1016 (S.D.N.Y. 1996) ("Plaintiff complains that his furnishings and supplies are inadequate and this interferes with his ability to prepare his cases. Although argued as a motion for a preliminary injunction, plaintiff in fact has moved for an order unrelated to the merits of his underlying claims, because there is no actual controversy between the parties before the Court regarding the adequacy of plaintiff's furnishings and supplies."); *see also Scarborough v. Evans*, No. 9:09-CV-0850 (NAM/DEP), 2010 WL 1608950, at *2 (N.D.N.Y. Apr. 20, 2010) (motion for preliminary injunction alleging use of excessive force and denial of medical care by non-parties denied where complaint alleged denial of mental health care and proper conditions of confinement); *Lewis v. Johnston*, No. 9:08-CV-0482 (TJM/ATB), 2010 WL 1268024, at *3 (N.D.N.Y. Apr. 1, 2010) (denying motion for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility in 2010, where the complaint alleged wrongdoing that occurred at Franklin and Upstate Correctional Facilities in 2006 and 2007).

  Second, plaintiff's belief that he will suffer irreparable harm in the absence of the relief that he seeks, in the form of a future assault by non-party corrections officials, is entirely speculative.  *D'Attore v. New York City*, No. 10-CV-3102, 2011 WL 3629166, at *3 (S.D.N.Y. June 2, 2011) (noting that the imminent threat of irreparable harm necessary to warrant injunctive relief cannot be established where the threat of imminent harm has been removed), *report and recommendation adopted in pertinent part by* 2011 WL 3629018 (S.D.N.Y. Aug.

7

17, 2011); *Murray v. New York*, 604 F. Supp. 2d 581, 584 (W.D.N.Y. 2009) ("[A] request for preliminary injunctive relief, even if warranted at one time, may become moot if the underlying factual circumstances have changed in the movant's favor. In other words, if, due to changed circumstances, the threatened harm dissipates, or ceases to be 'actual and imminent,' then injunctive relief may be denied."); *see also Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (preliminary relief cannot be founded on irreparable harm that is "remote or speculative"); *Hooks v. Howard*, No. 9:07-CV-0724, 2008 WL 2705371, at *2 (N.D.N.Y. July 3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages."); *cf. Guillory v. Ellis*, No. 9:11-CV-600 MAD/ATB, 2012 WL 2754859, at *5 (N.D.N.Y. July 9, 2012) ("Even if Plaintiffs motion for a TRO was directed at Defendants in this action, Plaintiff has failed to establish an imminent threat of irreparable harm or that other serious injury that would result if injunctive relief is not granted because the alleged new deprivations have already occurred.").  Indeed, plaintiff acknowledges in his motion papers that he is no longer housed with the inmate who allegedly assaulted him, and he has failed to offer any evidence showing that either of the corrections officials allegedly involved in the use-of-force incident on December 12, 2022, threatened him with further harm after the alleged assault.  *See Trowell v. Upstate Corr. Facility*, No. 9:16-CV-0639 (MAD/TWD), 2016 WL 7156559, at *8 (N.D.N.Y. Dec. 7, 2016) ("Plaintiff's fear that he may be assaulted in the future is purely speculative and, therefore, patently insufficient to show that he is likely to suffer imminent irreparable harm if the requested relief is not granted. . . . In his motion, plaintiff sets forth factual allegations related to the August 5, 2016 incidents, the same incidents that formed the foundation for the supplemental complaint. . . . Plaintiff cannot base

his request for relief upon past conduct and the anticipation of future assaults."); *Carter v. Artuz*, No. 95-CV-4785, 1997 WL 675337, at *8 (S.D.N.Y. Oct. 29, 1997) (denying preliminary injunction motion because "although a physical encounter did occur between C.O. Fusco and [the inmate plaintiff], it was of a spontaneous nature, not likely to be repeated, and [plaintiff]'s injuries were insufficient to require any further intervention by the Court").[5]

Third, insofar as plaintiff seeks an order directing defendant Gravlin to ensure that plaintiff is not subjected to retaliatory acts during the remainder of his confinement at Upstate Correctional Facility, such a request is tantamount to a request that all officials at this facility "obey the law."  "Obey the law" injunctions are vague, do not require a defendant to do anything more than that already imposed by law, subject the defendant to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement.  As such, these injunctions are disfavored.  *See N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941); *see also Rowe v. New York State Division of Budget*, No. 1:11-CV-1150 (LEK/DRH), 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012); *New York v. Shinnecock Indian Nation*, 560 F. Supp. 2d 186, 189 (E.D.N.Y. 2008).  In fact, according to the Second Circuit, "'[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.'"  *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)).

Finally, insofar as plaintiff seeks an order directing his transfer to another facility, it is the New York State Department of Corrections and Community Supervision ("DOCCS"), and not this Court, that determines where plaintiff will be housed during his period of

---

[5] Plaintiff also did not submit any medical records to support his statements related to the alleged injuries that he suffered on December 12, 2022.

incarceration.  *See Meachum*, 427 U.S. at 229; *Olim v. Wakinekona*, 461 U.S. 238, 248-49 (1983) (stating that inmates have no right to be confined in a particular state or particular prison within a given state); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976) (holding that New York state prisoners have no right to incarceration at a particular prison facility).  It is well-established that DOCCS has "broad leeway in deciding where to house the inmates under its protective care."  *McFadden v. Solfaro*, Nos. 95-CV-1148, 95-CV-3790, 1998 WL 199923, at *10 (S.D.N.Y. Apr. 23, 1998).

For all of these reasons, plaintiff's request for injunctive relief is denied without prejudice to him commencing a new action, wherein he may seek permissible injunctive relief as appropriate.

In light of the denial of the December 2022 Request for Injunctive Relief, the related Letter Request for Video Evidence is denied as moot.

### III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the December 2022 Request for Injunctive Relief (Dkt. No. 100) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that the Letter Request for Video Evidence (Dkt. No. 101) is **DENIED without prejudice** as moot; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated: February 28, 2023
         Albany, NY

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge