UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAY BRADSHAW,

                             **Plaintiff,**

  vs.                                                9:21-CV-826
                                                       (MAD/CFH)

MATTHEW WELCH, *et al.*,

                             **Defendants.**

---

APPEARANCES:                                   OF COUNSEL:

**JAY BRADSHAW**
**08-A-3654**
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**           MATTHEW GALLAGHER, AAG
**STATE ATTORNEY GENERAL**         LELA M. GRAY, AAG
Litigation Bureau
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") commenced this action alleging various constitutional violations. *See* Dkt. No. 1. By Decision and Order dated September 14, 2021, the Court granted Plaintiff's application to proceed *in forma pauperis* and dismissed several claims and Defendants, and found that Plaintiff's Eighth Amendment excessive force and failure-to-intervene claims

against Defendants Orbegozo, John Doe #1, Marshall, Locke, Russell, Welch, John Doe #2 and Gravlin survived initial review and required a response. *See* Dkt. No. 13.

By Decision and Order entered on August 8, 2022, the Court granted in part and denied in part a motion to amend and supplement filed by Plaintiff, directed the Clerk to docket Plaintiff's proposed amended complaint as the amended complaint, and clarified that the scope of this action is limited to claims based on alleged events that occurred on July 12, 2021. *See* Dkt. No. 82. Thereafter, Plaintiff filed a proposed second amended complaint, which the Court accepted as the second amended complaint by Decision and Order entered on July 10, 2023. *See* Dkt. No. 130. The procedural history of this case was discussed at length in the August 2022 and July 2023 orders, and will not be restated herein.

Currently before the Court are the following: (1) Plaintiff's appeals of Magistrate Judge Hummel's text orders denying Plaintiff's request for access to Defendants' personnel files, *see* Dkt. Nos. 157 & 165; (2) Plaintiff's motion for spoliation, *see* Dkt. No. 164; and (3) Plaintiff's appeal of Magistrate Judge Hummel's decision denying Plaintiff's third motion for the appointment of counsel. *See* Dkt. No. 181.

## II. DISCUSSION

**A.   Appeals of Magistrate Judge's Non-Dispositive Orders**

Magistrate judges are empowered with broad discretion relative to non-dispositive pre-trial matters. *See* 28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(a). As a result, a party seeking to disturb a magistrate's non-dispositive discovery order bears a heavy burden. *See Carmona v. Wright*, 233 F.R.D. 270, 276 (N.D.N.Y. 2006); *United States v. United States Currency in Sum of Twenty-One Thousand Nine Hundred Dollars*, No. 98-CV-6168, 1999 WL

993721, *2 (E.D.N.Y. Sept. 21, 1999); *American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 90 (S.D.N.Y. 2002).

On appeal, the district court reviews a magistrate judge's non-dispositive orders under the "clearly erroneous or contrary to law" standard of review.  *See* Fed. R. Civ. P. 72(a); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990); *Carmona*, 233 F.R.D. at 275.  A magistrate judge's order is "clearly erroneous" when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Carmona*, 233 F.R.D. at 276 (citing *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).  "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Carmona*, 233 F.R.D. at 276 (citing *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000)).

In applying this standard, it has been consistently held that a magistrate judge's discovery decision should be afforded substantial deference and should only be overturned where there is a clear abuse of discretion.  *See U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189, 2007 WL 2327068, *1 (S.D.N.Y. Aug. 13, 2007) (citation omitted).  Moreover, courts in the Second Circuit have held that "the critical inquiry is whether there is legal authority that supports the magistrate's conclusion[,]" and if so, then "there is no abuse of discretion." *Carmona*, 233 F.R.D. at 276 (citing *Tompkins*, 92 F. Supp. 2d at 74).

*1. Personnel Files*

On June 26, 2023, Plaintiff filed a motion to compel seeking, among other things, the production of Defendants' personnel files.  *See* Dkt. No. 128.  On July 13, 2023, Defendants opposed Plaintiff's motion.  *See* Dkt. No. 133.  A conference was held on September 14, 2023, to address the disputed discovery issues, which Plaintiff and Defendants' counsel attended by

telephone. Following the conference, Plaintiff's motion was granted in part and denied in part, and Defendants' counsel was ordered to deliver Defendants' personnel files to the Court for in camera review. *See* Dkt. No. 142. In a series of orders, Magistrate Judge Hummel advised that an in camera review of the personnel files was complete and it was determined that nothing in those personnel files was the proper subject of discovery under the Federal Rules of Civil Procedure. *See* Dkt. Nos. 150, 152, 154 & 161.

The Federal Rules of Civil Procedure limit the appropriate scope of discovery to relevant material. *See* Fed. R. Civ. P. 26(b)(1). "[T]he Court is plainly empowered to make determinations as to whether proposed discovery is, in fact, 'outside the scope' of this limitation." *Holmes v. City of New York*, No. 14 CV 5253, 2017 WL 519250, *3 (S.D.N.Y. Feb. 8, 2017) (citing Fed. R. Civ. P. 26(b)(1) & 26(b)(2)(C)(iii)).

Here, Plaintiff objects to Magistrate Judge Hummel's determinations following in camera review that "[t]here is nothing contained in any of these personnel files which is the proper subject of discovery pursuant to the Federal Rules of Civil Procedure." Plaintiff, however, fails to establish any reason that entitles him to the extraordinary relief of vacating or modifying the Court's decisions. Plaintiff's bare disagreement does not demonstrate clear error or illegality. *See Holmes*, 2017 WL 519250, at *3.

Upon review, the Court finds that Defendants' personnel files do not contain any proportionally relevant information or impeachment material; and, therefore, Plaintiff's appeals (Dkt. Nos. 157 & 165) are denied.

### 2. *Appointment of Counsel*

Plaintiff also appeals Magistrate Judge Hummel's order denying Plaintiff's third motion seeking the appointment of counsel. *See* Dkt. No. 183. Plaintiff contends that he requires an

attorney to assist him in engaging in discovery and obtaining expert witnesses to, "*inter alia*, analyze the need for the application of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by the defendant, and what, if any, efforts were made to temper the severity of a forceful response." *Id.* at 1.

It is well-settled that there is no right to appointment of counsel in civil matters. *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). 28 U.S.C. § 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *See id.* at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)); *Sawma v. Perales*, 895 F.2d 91, 95 (2d Cir. 1990). Among these are

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61. None of these factors are controlling, however, and each case should be decided on its own facts. *Id.*

Here, even assuming that this case may be of substance, Magistrate Judge Hummel correctly determined that appointment of counsel is not warranted at this time. Discovery in this case has been ongoing for nearly a year and a half and, throughout this time (and earlier), Plaintiff has demonstrated that he has a strong grasp of the issues and an ability to present his cases, having successfully amended his complaint multiple times, filed numerous requests for injunctive relief, and succeeded in part, on a motion to compel certain discovery. *See* Dkt. Nos. 119, 130, 142, 158 & 176. Moreover, the legal issues at issue in this case are not particularly complex and Plaintiff has failed to adequately articulate a reason why appointment of counsel at this time would be more likely to lead to a just determination. Additionally, as Magistrate Judge Hummel correctly determined, the fact that Plaintiff may wish to retain one or more expert witnesses is not a basis for appointing *pro bono* counsel, particularly at this stage of the litigation. *See Coke v. New York State Dep't of Corr. & Cmty. Supervision Med. Servs. Dep't*, No. 19-cv-10038, 2019 WL 6498232, *4 (S.D.N.Y. Dec. 2, 2019) ("Even if a medical expert would eventually be useful in prosecuting this case, this alone does not merit appointed counsel because such representation would not necessarily include access to a medical expert").

Finally, as Magistrate Judge Hummel noted, if this case proceeds to trial, it is highly probable that counsel will be appointed for purposes of trial. Accordingly, Plaintiff's appeal of the order denying his motion seeking the appointment of counsel (Dkt. No. 183) is denied. In the even that one or more of Plaintiff's claims survive any dispositive motion that may be filed, and this case is scheduled for trial, Plaintiff may file another motion for appointment of counsel.

**B.    Motion for Spoliation**

In his motion for spoliation, Plaintiff claims that Defendants were obligated to preserve certain videos from July 12, 2021 depicting two use-of-force incidents, that Plaintiff claims

Defendants either lost or destroyed. *See* Dkt. No. 164 at 8. Plaintiff contends that the Court should deem his allegations relating to the two July 12, 2021, incidents as proven fact as a penalty for Defendants' alleged spoliation. *See id.*

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Historically, a party seeking sanctions based on the destruction of evidence was required to establish the following: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quotation omitted). But in 2015, the Federal Rules of Civil Procedure were amended to address spoliation of electronically stored information ("ESI"). *See Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 425 (W.D.N.Y. 2017). Spoliation of ESI is now governed by Rule 37(e) of the Federal Rules of Civil Procedure and is subject to a slightly different analysis as compared to spoliation of tangible evidence.[1] *See Matthews v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 17-cv-503, 2023 WL 2664418, *12 (N.D.N.Y. Mar. 28, 2023). Under Rule 37(e), where a court finds that "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may, upon a finding of prejudice to a party, order

---

[1] Video footage, handheld or otherwise, is ESI. *See Vega v. Broome Cnty.*, No. 9:21-cv-788, 2023 WL 6318919, *6 (N.D.N.Y. Sept. 28, 2023).

measures no greater than necessary to cure the prejudice, or, only upon a finding of intent to deprive another party of the ESI, presume that the ESI was unfavorable to the spoliating party; instruct the jury that it may or must presume the ESI was unfavorable to the spoliating party; or dismiss the action or enter a default judgment.

"Aside from modifying the state of mind required of a spoliator, the 2015 amendments to Rule 37(e) did not significantly alter the elements required at common law for sanctions to issue." *Ungar v. City of N.Y.*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018), *aff'd*, No. 21-1384, 2022 WL 10219749 (2d Cir. Oct. 18, 2022).  The party requesting spoliation sanctions "must still establish that the evidence 'should have been preserved in the anticipation or conduct of litigation,' *i.e.*, that the spoliator had a duty to preserve the evidence, and that the evidence was 'lost because a party failed to take reasonable steps to preserve it,' *i.e.*, that such a duty was breached." *Stanbro v. Westchester Cnty. Health Care Corp.*, No. 19-cv-10857, 2021 WL 3863396, *5 (S.D.N.Y. Aug. 27, 2021) (quoting Fed. R. Civ. P. 37(e)).  "Furthermore, the movant must be prejudiced by the absence of the spoliated evidence to be entitled to sanctions under Rule 37(e)(1) ...." *Id.* at *5 (citing *Ungar*, 329 F.R.D. at 13).

While in general "[t]he party seeking sanctions bears the burden of establishing all elements of a claim for spoliation of evidence," *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008), Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other ... [but rather] leaves judges with discretion to determine how best to assess prejudice in particular cases," *Ungar*, 329 F.R.D. at 16 (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).  Upon a finding of prejudice, a court "is tasked with determining the 'least harsh sanction that can provide an adequate remedy.'" *Europe v. Equinox*

*Holdings, Inc.*, 592 F. Supp. 3d 167, 175 (S.D.N.Y. 2022) (quoting *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014)).

Here, Plaintiff seeks spoliation sanctions and alleges that videos of two (2) of the four (4) incidents set forth in the complaint were not preserved. *See* Dkt. No. 164 at 7-9. He first alleges that the video associated with the "First Incident" in the complaint was not preserved. *See id.* at 7-8. Plaintiff then alleges that the handheld camera video of the "Third Incident" set forth in the complaint was not preserved. *See id.* at 8-9. Plaintiff contends that he has been prejudiced as a result of Defendants' alleged failure to preserve the videos of these incidents, and he asks the Court to "deem the facts to be established." *Id.* at 9. Defendants, however, argue that the motion should be denied because "(1) videos of the two incidents addressed in the spoliation motion are preserved; (2) Plaintiff suffered no prejudice; (3) Plaintiff failed to show that Defendants acted with the intent to deprive him of evidence in this lawsuit; and, (4) the lack of preservation, if any, should not be imputed to the Defendants under the circumstances." Dkt. No. 179 at 6.

### 1. First Incident

In his complaint, Plaintiff alleges that the First Incident occurred on July 12, 2021, while Plaintiff was being escorted from his cell to a disciplinary hearing. *See* Dkt. No. 119 at ¶¶ 15-19. Plaintiff alleges during the escort, Defendant Orbegozo repeatedly and intentionally "collided" into him, and that Plaintiff's complaints that he could fall were ignored. *See id.* at ¶¶ 15-18. Thereafter, Plaintiff does not allege an injury, a fall, or a use of force by any Defendants until after he reached the top of the stairs. *See id.* Plaintiff then alleges that Defendant Orbegozo "directed plaintiff to stop at the top of the stairs and to face the wall, after which point he applied force to plaintiff's back, causing his head to hit the wall, and then slammed plaintiff to the floor single-handedly." *Id.* at ¶ 18. Less than five (5) seconds later, Plaintiff was lifted to his feet and

escorted to the bottom of the steps where Defendants Locke and Gordon took over the escort. *See id.* at ¶ 19. This incident occurred at approximately 10:37 a.m. on July 12, 2021. No other incidents in the complaint allege involvement by Defendant Orbegozo.

Contrary to Plaintiff's contention, the use of force occurrence at approximately 10:37 a.m. on July 12, 2021, involving Plaintiff and Defendant Orbegozo was documented as part of use of force 21-069, and the video has been preserved. *See* Dkt. No. 179-2 at ¶ 17. Specifically, Defendants have represented that video of the use of force incident that occurred at the "top of the stairs (second tier)," Dkt. No. 164 at 7, is preserved in the OSI file, which was presented to Plaintiff for viewing during a controlled review that occurred on September 11, 2023. *See* Dkt. No. 179-2 at ¶¶ 17, 21. In fact, Plaintiff even admits that "[t]his video was preserved," Dkt. No. 164 at 7, and Plaintiff acknowledges that OSI reviewed the videos as part of their investigation of these incidents. *See id.* at 8.

Since these videos have been preserved and because Plaintiff has been afforded an opportunity to review them, this aspect of Plaintiff's motion is denied.

### 2. Third Incident

In his complaint, Plaintiff alleges a "Third Incident" on July 12, 2021, involving a use of force against him whereby Plaintiff was purportedly "slammed" to the floor after a pat frisk. *See* Dkt. No. 119 at ¶ 24. Plaintiff alleges that during the Third Incident Defendant Olson "intentionally focused [a] hand-held camera on defendant Russell's back" during the use of force incident to "conceal the defendant's Russell's intended misconduct." *Id.* at ¶ 25. Plaintiff contends that a handheld camera was utilized during the Third Incident because he reported that a Prison Rape Elimination Act ("PREA") violation occurred earlier in the day on July 12, 2021, during the "Second Incident." *Id.* at ¶ 22 (alleging that a metal object was showed into his buttock during the

Second Incident). He asserts that the handheld camera video should have been preserved as part of the PREA investigation. *See* Dkt. No. 164 at 9. Defendants, however, note that there was no handheld video camera operated during the use of force incident involving the alleged PREA violation (the Second Incident), *see* Dkt. No. 179-2 at ¶ 17, and the Third Incident did not involve any alleged PREA allegations. *See* Dkt. No. 119 at ¶¶ 24-25.

The Third Incident occurred in the afternoon of July 12, 2021, several hours after the Second Incident alleged in the complaint, while Plaintiff was being escorted from his cell to medical for evaluation upon Plaintiff's request. *See* Dkt. No. 179-2 at ¶ 18. The Third Incident involved Plaintiff and Defendants Russell, Marshall, and Olson, and was documented by DOCCS under use of force incident 21-070. *See id.* Defendants acknowledge that Defendant Olson did operate a handheld camera for the escort and that the handheld camera video cannot be located. *See id.* at ¶ 25. However, facility surveillance video documented the entire use of force incident that afternoon and this video has been preserved and was presented to Plaintiff for his viewing during the controlled review that occurred on September 11, 2023. *See id.* at ¶¶ 17, 20-21.

In his motion, Plaintiff contends that "without the handheld video camera ... plaintiff will be unable to establish that defendant Olsen [sic] intentionally failed to video plaintiff on the camera even when defendant Russell slammed plaintiff to the ground without provocation, and that plaintiff's face was covered in dry blood before medical staff cleaned it." Dkt. No. 164 at 9. As Defendants note, however, the facility surveillance video of the entire incident is preserved and the handheld video camera operated by Defendant Olson would not have captured Plaintiff's face, since it was being operated behind Plaintiff as he was being escorted. Since the facility surveillance video has been preserved, which is the best evidence available because it provides an overhead view of the incident whereby Defendant Olson's actions may be fully appreciated, the

Court finds that Plaintiff has failed to establish that he was prejudiced by the failure to preserve the handheld video. Accordingly, Plaintiff's motion for spoliation sanctions as to the handheld video must be denied.

### *3. Intent and Imputation to Defendants*

"The intent standard is both stringent and specific: '[T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence.'" *Doubeline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-cv-4576, 2021 WL 1191527, *8 (S.D.N.Y. Mar. 30, 2021) (quoting *Leidig v. Buzzfeed, Inc.*, No. 16-cv-542, 2017 WL 6512353, *11 (S.D.N.Y. Dec. 19, 2017)). It is the movant's burden to establish by clear and convincing evidence that the non-moving party acted with the intent to deprive him of the spoliated evidence. *See id.* Spoliation sanctions should not be ordered where a moving party fails to meet his burden. *See id.*

Here, Plaintiff failed to meet his burden of establishing through clear and convincing evidence that Defendants acted with the intent to deprive him of any ESI. First, there is no evidence that any of the Defendants were involved in the preservation of the DOCCS surveillance videos of the First Incident. To the contrary, none of the named Defendants had any direct control over the preservation of ESI. *See* Dkt. No. 179-2 at ¶ 20.

There is also no evidence that any Defendant accessed, destroyed, or altered either the video depicting the First Incident or the handheld camera video associated with the Third Incident. Due to DOCCS' policy not to preserve "the uneventful portions of surveillance video which do no show any use of force," the video of the First Incident begins shortly before the use of force incident at the top of the stairs and ends shortly thereafter. *See id.* at ¶ 12. Likewise, "[t]here is no evidence that any of the Defendants ever had any knowledge of the location of the

handheld camera video of [the Third Incident] once the video camera was returned to the Watch Commander's Office after the incident." *Id.* at ¶ 26. When considered together, there is simply no evidence that any of the named Defendants acted to destroy, lose, or alter the videos of the First and Third Incidents, or that they acted in any way with the intent to deprive Plaintiff from having this evidence at the trial in this matter.

Accordingly, Plaintiff's motion is denied on this alternative ground.[2]

### III. CONCLUSION

After careful review of the entire record in this matter, the parties submissions and the applicable law, the Court hereby

**ORDERS** that Plaintiff's appeals (Dkt. Nos. 157, 165 & 183) are **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for spoliation sanctions (Dkt. No. 164) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 22, 2024
Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[2] Alternatively, there is not basis to impute any alleged spoliation to the named Defendants in this action, where they were not responsible for the preservation of the videos at issue and Plaintiff has failed to demonstrate that he has been prejudiced in any way. *See Thousand v. Corrigan*, No. 9:15-cv-1025, 2017 WL 4480185, *3 (N.D.N.Y. Oct. 6, 2017); *see also Stanbro v. Westchester Cnty. Health Care Corp.*, No. 19-cv-10857, 2021 WL 3863396, *7 (S.D.N.Y. Aug. 27, 2021).