**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAY BRADSHAW,

                            Plaintiff,

       v.                                                              No. 9:21-CV-826
                                                                        (ECC/PJE)
MATTHEW WELCH, GABRIEL ORBEGOZO,
NATHAN LOCKE, JOSEPH RUSSELL, ALBERT
GRAVLIN, DONALD UHLER, ERIC MARSHALL,
JAMESKILCOYNE, AARON MITCHELL,
MICHAEL McCARGAR, CONOR GORDON,
MORGAN DUMAS, WILLIAM VESKESKE,
CHRISTOPHER OLSEN, and REGINALD BISHOP,

                         Defendants.

---

**APPEARANCES:**                                    **OF COUNSEL**:

Jay Bradshaw
08-A-2654
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Plaintiff pro se

New York State Attorney General              LELA M. GRAY, ESQ.
The Capitol                                          Assistant Attorney General
Albany, New York 12224
Attorney for defendants

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

      Plaintiff pro se Jay Bradshaw ("plaintiff"), an individual who, at all times relevant

to this action, was incarcerated at Upstate Correctional Facility, commenced this action

by filing a complaint on July 21, 2021, pursuant 42 U.S.C. § 1983, and an amended

1

complaint on August 8, 2022, and a second amended complaint[1] on May 10, 2023. Presently before the undersigned is defendants' partial Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Dkt. No. 209. Plaintiff opposed. *See* Dkt. No. 216. Defendants replied. *See* Dkt. No. 218.

## II. **Relevant Procedural History**

On July 10, 2023, District Judge Mae D'Agostino reviewed the sufficiency of plaintiff's Second Amended Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B), 1915A(b).[2] *See* Dkt. No. 130. Therein, the Court concluded that the following claims survived sua sponte review: plaintiff's (1) Eighth Amendment excessive force and failure-to-intervene claims involving defendants Veneske, Orbegozo, Marshall, Locke, Kilcoyne, Russell, Gravlin, Welch, Mitchell, Dumas, Olsen, Gordon, and McCargar; (2) Eighth Amendment failure-to-protect claims against defendants Uhler and Bishop; and (3) First Amendment retaliation claims against defendants Locke, Gordon, Russell, Welch, Orbegozo, and Marshall. *See id.* at 18.

## III. **Legal Standards**

Fed. R. Civ. P. 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant

---

[1] Plaintiff erroneously labeled the second amended complaint as a third amended complaint. *See* Dkt. No. 120 at 3 n.2.

[2] For a review of additional procedural history in this action, reference is made to the Court's July 10, 2023, Decision & Order. *See* Dkt. No. 130 at 1-3.

or unnecessary" will not preclude summary judgment, summary judgment cannot be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted."). The party seeking summary judgment bears the burden of informing a court of the basis for its motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "mere conclusory allegations, speculation, or conjecture," *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" to support its claims, *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 133, 150 (2000). The Court "may not make any credibility determinations or weigh the evidence." *Id.* Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a plaintiff proceeds pro se, the court must grant him "special solicitude," construe his submissions "liberally," and read such submissions "to raise the

3

strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted) (citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)).  This is because "a pro se litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if [ ] not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing *Triestman*, 470 F.3d at 475).  However, the Second Circuit has cautioned district courts that they "cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest." *Triestman*, 470 F.3d at 477 (citations omitted).  Further, the "special solicitude" standard does not excuse "frivolous or vexatious filings by pro se litigants," nor does it "exempt a party from compliance with relevant rules of procedural and substantive law." *Id.*

## III. **Facts**

### A. **Plaintiff's Version**

Plaintiff alleges a series of four incidents involving an unconstitutional use of force.  He contends that on July 12, 2021, defendants Orbegozo and Kilcoyne escorted plaintiff to a hearing.  *See* Dkt. No. 119 at 3 (Second Amended Complaint, hereafter, "SAC").  During the escort, Orbegozo "intentionally and repeatedly collided is body into plaintiff." *Id*. at 3.  Plaintiff told Orbegozo to stop or he would cause plaintiff to fall.  *See id*.  Plaintiff "use[d] obscene language toward" Kilcoyne, Marshall, and Orbegozo.  *See id*.  "For that reason," Veneske directed plaintiff back to his cell.  *See id*.  Orbegozo directed plaintiff to face the wall, "applied force to plaintiff's back, causing his head to hit the wall, and then slammed plaintiff to the floor single-handedly." *Id*.  "Less than five

4

second (sic), Orbegozo and Kilcoyne lifted plaintiff to his feet and escorted plaintiff to the bottom of the steps where defendant Locke and Gordon stood and took hold of plaintiff." *Id.*

That same day, Locke and Gordon escorted plaintiff to his cell, with Veneske, Marshall, McCargar, and Dumas following behind. *See* SAC at 3. At the entrance to plaintiff's cell, Locke pulled plaintiff to the ground by his handcuffs, grabbed him by the neck, while Gordon grabbed plaintiff by the legs, and the two "dragged plaintiff into the cell." *Id.* Gordon then "punch and kicked plaintiff several times on the right side of his face and head, and Lock punched and kicked plaintiff and cause (sic) his chin to split open." *Id.* at 3-4. Marshall kicked plaintiff twice in the right arm and told him, "we are going to whip your ass in this cell every time we feel like it," telling him that the cameras were too far from his cell. *Id.* at 4. Next, "Locke shove (sic) metal in plaintiff's buttock and shoved him under the bed hog-tied." *Id.*

Plaintiff next went to the clinic to be evaluated by medical staff after he requested an emergency sick call due to his bleeding chin. *See* SAC at 4. While Russell was retrieving plaintiff from his cell, he searched plaintiff and directed plaintiff to put his hands on the wall. "[A]s plaintiff was fixing his face mask," Russell "grabbed plaintiff from behind and slammed him to the floor." *Id.* Defendant Marshall and defendant Olsen were present. *See id.* Olsen "intentionally focused the hand-held camera on defendant Russell's back" even after plaintiff called attention to the fact that the camera was not focused on plaintiff. *Id.* Plaintiff contends that Olsen intentionally directed the camera away "to conceal the defendant Russell's intended misconduct." *Id.*

Plaintiff was thereafter evaluated by the facility's medical staff and was referred to an outside hospital.  *See* Compl. at 4.  Before he left for the hospital, Gravlin "directed all medical staff to exit the exam room and stated to plaintiff 'you will get your ass beat by my two officers with sticks and mace.'"  *Id.*  While in the van on the way to the hospital, Welch "punched plaintiff in the back of the head several times and put plaintiff in the choke hold," and "Mitchell poked plaintiff in the torso with his stick."  *Id.*  While at the hospital, Welch told plaintiff" that he had not been "assigned out of the facility in over twenty years and I only came out for this."  *Id.*  Welch and Mitchell "mocked" and threatened plaintiff "to be hurt bad on way back to facility."  *Id.*

Plaintiff argues that Uhler and Bishop intentionally denied or failed to act on grievances plaintiff filed in May and June 2021.  *See* SAC at 5.  Plaintiff contends, "[u]pon information and belief, "staff use force against prisoners at Upstate with alarming frequency although prisoners are in handcuffs and restrains for all out-of-cell movement."  *Id.*  Plaintiff contends that Uhler and Bishop "condone and tactility approve the unnecessary and excessive force by failing to supervise, train or otherwise control and discipline their officers."  *Id.*

### B.  **Defendants' Statement of Facts**[3]

As to the first July 12, 2021, incident, where Orbegozo bumped into plaintiff during an escort to plaintiff's disciplinary proceeding, plaintiff did not sustain any physical injury from being bumped.  *See* Dkt. No. 209-6 at 4.  On the escort back to

---

[3] Defendants' Statement of Material Facts Pursuant to Rule 56.1(a) contains this caveat: "[t]hese facts are considered undisputed for the sole purpose of this motion for summary judgment.  Should Defendants' motion be denied, Defendants reserve all rights to dispute any allegation made by Plaintiff in this matter."  Dkt. No. 209-6 at 1 n.2.  Thus, the undersigned includes here only where the defendants' statement of material facts conflicts with or rejects plaintiffs' version.

plaintiff's cell, plaintiff cursed at the officers, leading to Orbegozo ordering him to stop and face the wall. *See id.* Plaintiff alleges that Orbegozo pushed him, causing his head to hit the wall, and then forced him to the ground. *See id.* Plaintiff does not allege that any person besides Orbegozo touched him during this incident. *See id.* "Two to three seconds later, Orbegozo lifted Plaintiff to his feet and walked him down the stairs without further incident." *Id.*

As to the second July 21, 2021, incident, plaintiff refused a medical evaluation. *See* Dkt. No. 209-6 at 4. Plaintiff alleged that while Locke, Gordon, and Marshall physically and sexually assaulted plaintiff in his cell, McCargar and Dumas remained outside. *See id.* at 5. Plaintiff did not see Veneske outside his cell during or after the alleged assault. *See id.* Defendant Marshall was the only person who spoke to him during the alleged assault. *See id.*

Regarding the third incident, while being pat-frisked outside of his cell, plaintiff removed his hands from the wall to adjust his face mask "when Defendant Russell grabbed him from behind and forced him to the ground." Dkt. No. 209-6 at 5. Plaintiff "was stood back up less than five seconds after being taken down" and suffered no injuries "as a result of the take down." *Id.*

With respect to the final incident, neither Welch nor Mitchell "spoke to him other than threatening to beat him up when he came back to the hospital." Dkt. No. 209-6 at 6. "Defendants Gravlin, Dumas, McCargar, Olsen, and Kilcoyne never touched Plaintiff on July 12, 2021." *Id.*

7

Grievance UST-606-21 was denied "after an investigation produced no evidence to support plaintiff's allegations." Dkt. No. 209-6 at 7. Uhler did not sign the denial of plaintiff's grievance. *See id.*

IV. <strong>Arguments</strong>

Defendants argue that plaintiff's failure-to-protect claims against Uhler and Bishop must be dismissed due to lack of personal involvement. *See* Dkt. No. 207-7 at 10. Further, they argue that these defendants did not have subjective knowledge of a substantial risk of harm that they disregarded. *See id.* Defendants contend that plaintiff cannot demonstrate "either of the two requisite elements for supervisory failure to protect claim." *Id.* "Furthermore, Plaintiff has no personal knowledge or third-party report that Uhler ever reviewed his grievances in May and June of 2021, and he does not believe that Bishop had any knowledge of his May and June grievances." *Id.* at 11. Although "Uhler decided, and Bishop helped investigate" the grievance, it was denied due to a lack of evidence. *See id.* at 12. Defendants argue, even if plaintiff could demonstrate that these defendants knew of and disregarded an excessive risk to plaintiff's health or safety or that they were aware of the facts from which an inference could be drawn and actually drew such an inference, the awareness of the prior grievances or correspondence "do[es] not suffice to state a § 1983 claim against supervisory officials." *Id.* at 12.

Defendants next argue that plaintiff's Eighth Amendment claims must be dismissed as against Gravlin, Russell, and Olsen due to a lack of personal involvement. *See* Dkt. No. 209-7 at 12. As to Gravlin, plaintiff did not establish his presence or involvement in any of the alleged use-of-force incidents and alleges only that he

threatened him after the third incident but admits that Gravlin did not physically touch him. *See id.* at 13. They further aver that plaintiff acknowledges that Olsen was present with Russell allegedly grabbed plaintiff from behind and took plaintiff down, but that Olsen "never touched him on July 12, 2021." *Id.* Defendants contend that Olsen's alleged mere presence does not "rise to the level" of failure to intervene and does not establish the requisite wantonness. *See id.* Similarly, as to Russell, they contend that his alleged conduct does not amount to an Eighth Amendment excessive force violation because plaintiff admitted to taking his hands off of the wall, "he was back on his feet within five seconds, and he did not sustain any injury." *Id.*

Defendants argue that plaintiff's First Amendment retaliation claims against Russell and Welch must be dismissed because they "are based upon alleged prior assaults, not grievances written by Plaintiff." Dkt. No. 209-6 at 3 (citing Plaintiff's Deposition, Dkt. No. 209-2 at 77:4-15). "Neither the Defendants nor anyone else every told plaintiff that any of the Defendants had knowledge of his grievance." Dkt. No. 2-9-6 at 3. Defendants also argue that the First Amendment retaliation claims against Locke, Orbegozo, Marshall, and Gordon must similarly be dismissed as there exists "no demonstrable causal connection between his grievances and the alleged assaults of July 12, 2021." *Id.* They opine that plaintiff has made no allegations that any defendant "ever mentioned" any of plaintiff's grievances or protected conduct; therefore, he cannot demonstrate it was a substantial or motivating factor in the alleged assaults. *See id.* at 15-16.

Plaintiff argues that the Eighth Amendment Failure-to-Protect claims against Uhler must be denied.[4]  He alleges that Uhler was aware, before the alleged incidents of July 12, 2021, of an "alarming rate" of use of force on prisoners in Update's SHU. Dkt. No. 216 at 3.  He contends that Uhler "ignored: is May 20, May 31, and June 6, 2021, grievances regarding the alleged assaults and harassment, and denied plaintiff's June 27 and July 1, 2021, grievances.  *See id.*  Plaintiff contends that, as a result of the alleged ignoring and denying of grievances, he "was subjected to four (4) consecutive assaults on July 12, 2021[,]" which Uhler failed to protect plaintiff from.  *Id.*  Plaintiff next argues that defendants' motion to dismiss plaintiff's Eighth Amendment excessive force claim against Russell and Failure-to-Intervene claims against Gravlin and Olsen.  *See* Dkt. No. 216-2 at 3.  As to the excessive force alleged against Russell, plaintiff contends that the force " was unnecessary in the circumstance" and applied "maliciously and sadistically" to cause him harm.  *See id.*

With respect to the failure-to-intervene claim against Gravlin, plaintiff contends that there exists a genuine issue of material fact because Gravlin threatened that Welch and Mitchell would beat him with sticks and mace, and plaintiff suffered those attacks en route to the hospital.  *See id*.  Similarly, plaintiff contends that Olsen's intentional failure to point the camera to capture defendant Russell's assault of plaintiff also creates a genuine issue of material fact "based on the facts in his declaration," warranting denial of summary judgment.  *Id.* at 4.

---

[4] Plaintiff does not address in his opposition papers the failure-to-protect claim against Bishop. *See* Dkt. No. 119. case law that says failure to oppose amounts to consent.  However, even if he had, the undersigned would recommend granting of the motion defendants have demonstrated that plaintiff has failed to sufficiently allege supervisory liability involving defendant Bishop.

Lastly, on the First Amendment retaliation claims, plaintiff contends that his declaration demonstrates that his claim against Welch is based on his lawsuit *Bradshaw v. Fletcher, et al.*, 19-CV-0428. *See* Dkt. No. 216-2 at 4-5. Plaintiff further contends that Welch's alleged statement that he left the facility for the first time in twenty years to be able to assault plaintiff could cause a reasonable jury to find in his favor. *See id.* Plaintiff further argues that there exists a causal connection between the grievances against Orbegozo, Marshall, Gordon, and Locke and the alleged assaults. He contends that the fact that he alleged that these defendants were not assigned to the posts or escort but made sure to be present or switched posts to be present demonstrate a causal connection. *See id.* Plaintiff argues that it is "notabl[e] that each individual that physically engaged plaintiff on July 12, 2021 all were officers (Orbegozo, Marshall, Gordon, Locke, Russell and Welch) who plaintiff filed grievances and or complaints against." *Id.* at 5. Further, plaintiff asserts that there is "an unwritten policy at Upstate for officers to assume or switch a post to engage prisoners who file grievances for purposes of harassment, intimidation or assault." *Id.*

In reply, defendants argue that plaintiff abandoned his claims against Bishop. *See* Dkt. No. 218 at 3. Defendants otherwise reiterate the arguments raised in their motion. *See generally id.*

## V. **Discussion**[5]

### A. **Supervisory Liability: Uhler & Bishop**

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

---

[5] Unless otherwise noted, the Court has provided plaintiff with copies of any unpublished decisions cited herein.

*Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).  "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); *Rogers v. Lamont*, 3:22-CV-66 (OAW), 2022 WL 3716446, at *4 (D. Conn. Aug. 29, 2022) ("[C]onclusory claims that a supervisor did not respond to letters or grievances" are "insufficient to establish personal involvement.") (internal quotation marks and citation omitted)); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation.").

Moreover, even where the supervisory defendants were aware of grievances and complaints, "their 'mere knowledge' is insufficient to adequately plead a Section 1983 violation.'" *Sloley v. NYS DOCCS*, No. 9:23-CV-1469 (AMN/TWD), 2024 WL 1079886, at *10 (N.D.N.Y. Jan. 19, 2024), aff'd *in part, appeal dismissed in part sub nom. Sloley v. New York State Dep't of Corr. & Cmty. Supervision*, No. 24-662, 2025 WL 1416658 (2d Cir. May 16, 2025) (quoting *Brunache v. Annucci*, No. 22-CV-196, 2023 WL 146850, at *15 (W.D.N.Y. Jan. 9, 2023)).

### 1. **Uhler**

Plaintiff contends that Uhler is liable for the July 12, 2021, assaults because he "ignored" or "failed to decide" plaintiff's three grievances regarding assault and harassment and denied plaintiff's June 27, and July 1, 2021, grievances.  SAC at 5; 216-2 at 3.  Plaintiff contends that Uhler's actions regarding these grievances is what

allowed plaintiff to be assaulted on July 12, 2021.  He further contends Uhler is liable because of his knowledge of a "high rate of use of force" against Upstate's SHU inmates, even though they are shacked when out of their cells.  SAC at 5.  Plaintiff contends Uhler "condoned" and "tactility approved" the assaults through a failure to train, supervise, or discipline "officers."  *Id.*

The Court agrees with defendants that plaintiff's conclusory, unsupported statement that Uhler was aware of a "alarming high-rate" of force against SHU inmates at Upstate does not suffice to establish his personal involvement in the alleged July 12, 2021, assaults.  SAC at 5.  As defendants note, at the time of the alleged July 12, 2021, assaults, the earlier assaults had already occurred.  It is well-settled that a "failure to remedy" theory of liability is not available against a supervisor with respect to discrete and completed violations.  *See Funches v. Rockwood*, No. 9:20-CV-0676 (MAD/CFH), 2020 WL 14020106, at *20 (N.D.N.Y. Aug. 14, 2020) (first citing *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001); then citing *Blyden v. Mancusi*, 186 F.3d at 259, 264 (2d Cir. 1999); then citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

Next, to the extent plaintiff refers to Uhler's denial of plaintiff's June 27, 2021, and July 1, 2021, grievances, "'[i]t is clear that affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983[.]'" *McLean v. Ferguson*, No. 9:20-CV-1115 (TJM/TWD), 2021 WL 6750544, at *6 (N.D.N.Y. Nov. 5, 2021), *report and recommendation adopted*, No. 9:20-CV-1115 (TJM/TWD), 2022 WL 252162 (N.D.N.Y. Jan. 27, 2022) (quoting *Viera v. Sheahan*, No. 6:17-CV-06844 EAW, 2021 WL 1226482, at *5 (W.D.N.Y. Mar. 31, 2021) (quoting *Morales v. Fischer*, 46 F. Supp. 3d 239, 255 (W.D.N.Y. 2014)).

Plaintiff's statement of Uhler's personal involvement "ask[s] the Court to hold that the filing of grievances is sufficient to put a supervisory official on notice that the grievant will be subjected to unconstitutional conduct at the hands of his or her staff members." *Diaz v. Burns*, No. 6:10-CV-6595, 2013 WL 5951866, at *5 (W.D.N.Y. Nov. 6, 2013) (denying supervisory liability claim), which courts in this Circuit have held does not suffice.  Further, as defendants argue, plaintiff does not show that Uhler had personal knowledge of the May 20, May 31, June 6, June 27, and July 1, 2021, grievances.  S*ee* Dkt. No. 218 at 5.  Three of the grievances were merely copied to Uhler's office and two of the grievances were about timeliness of a response to grievances and did not discuss physical assaults involving the defendants.  *See* Dkt. No. 216 at 9-14; Dkt. No. 217 at 2-6.  Accordingly, it is recommended that defendants' motion as to plaintiff's Eighth Amendment failure-to-protect claim based on supervisory liability be granted as against Uhler.

### 2. **Bishop**

As to defendant Bishop, the undersigned agrees with defendants that plaintiff abandoned the claim by not addressing it in his opposition to defendants' motion for summary judgment.  *See Levy v. Maggiore*, 48 F. Supp. 3d 428, 452 (E.D.N.Y. 2014) ("Plaintiff does not respond to this argument and the Court therefore construes Plaintiff's failure to respond as an abandonment of this claim."); *see also Williams v. Baxter*, No. 16-CV-00115-LJV-HKS, 2025 WL 1105817, at *8 (W.D.N.Y. Mar. 17, 2025), *report and recommendation adopted sub nom. Williams v. The Hon. Warrant Issuing Judg*e, No. 16-CV-115-LJV-HKS, 2025 WL 1101509 (W.D.N.Y. Apr. 14, 2025) (dismissing claim as abandoned on motion for summary judgment where plaintiff failed to respond to the

defendants' argument).  However, even if plaintiff had not so abandoned, the undersigned would have recommended granting summary judgment as to Bishop for the same reasons to those detailed above with defendant Uhler, *supra*.  Plaintiff merely alleged that Bishop was liable for failing to protect plaintiff from the July 12, 2021, alleged assaults because he denied grievances regarding claims of assault and/or harassment involving the defendants Orbegozo, Osborn, and Marshall that preceded the July 11, 2021, alleged assault.  *See* SAC at 5; Dkt. No. 216-2 at 3.

However, as defendants provide, plaintiff testified that he was unaware of whether Bishop had any personal knowledge of the grievances and never spoke to him about the grievances.  Further, as detailed above, a denial of a grievance or failure to investigate allegations in a grievance, or a failure to remedy does not suffice to allege supervisory liability. *See Funches*, 2020 WL 14020106, at *20.

For the reasons above, it is recommended that defendants' motion, as to plaintiff's Eighth Amendment failure-to-protect claim against Bishop based on supervisory liability, be granted.

### B. **Eighth Amendment**

#### 1. **Excessive Force**

Defendants seek plaintiff's Eighth Amendment excessive force claim against Russell to be dismissed because plaintiff conceded that he took his hands off of the wall during the pat frisk, that he was brought to his feet in less than five seconds, and that he did not suffer injury.  *See* Dkt. No. 218 at 7.  Thus, defendants conclude that the use-of-force "does not rise to the level of unconstitutional excessive force[.]"  Dkt. No. 209-7 at 13.

Plaintiff argues that Russell's use of force was "unnecessary in the circumstance" and "in a manner excessive to any need" in that he "grabbed plaintiff from behind and slammed him to the floor."  SAC at 4; Dkt. No. 216 at 6; Dkt. No. 216-2 at 3-4; Dkt. No. 216-1 at 2 ¶¶21-23 (admitting defendants' paragraphs 32 ("Plaintiff was stood back up less than five seconds after being down.") (citing Plaintiff's Deposition, Dkt. No. 209-2 at 212:7-8), 33 ("Plaintiff was not injured as a result of the takedown.") (citing Plaintiff's Deposition, Dkt. No. 209-2 at 210:22-23).

> When evaluating excessive force claims, a court may consider the extent of the injury suffered by the inmate plaintiff. While relevant, it is not dispositive that a plaintiff does not suffer significant injury. *Hudson*, 503 U.S. at 7, 112 S.Ct. at 999. Use of force that is de minimis can constitute cruel and unusual punishment if such use of force is "repugnant to the conscience of mankind." *Id.* at 9-10, 112 S.Ct. at 1000 (citations omitted). It should be noted, however, that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson*, 481 F.2d at 1033. In addition to the extent of the inmate's injury, the court must also inquire as to the need for the use of force, whether the amount of force used was proportionate to the need, and whether the prison officials did anything to mitigate their use of force. *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085 (citing, inter alia, *Johnson*, 481 F.2d at 1033).

*Murray v. Goord*, 668 F. Supp. 2d 344, 360 (N.D.N.Y. 2009).

> To prove the subjective element, plaintiffs must show that the Defendant's actions were wanton. *Simms*, 230 F.3d. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). When determining whether defendants acted in a malicious or wanton manner, courts consider five factors: (1) the extent of the injury and the mental state of the defendant; (2) the need for the application of force; (3) the correlation between that need and the amount of force used; (4) the threat reasonably perceived by the defendants; and (5) any efforts made by the defendants to temper the severity of a forceful response.  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

*Oudekerk v. Doe #1*, No. 9:24-CV-113 (AJB/MJK), 2025 WL 3286723, at \*4 (N.D.N.Y. Oct. 31, 2025), *report and recommendation adopted sub nom. Oudekerk v. Wanninger*, No. 9:24-CV-113 (AJB/MJK), 2025 WL 3282712 (N.D.N.Y. Nov. 25, 2025).

The undersigned believes the argument is a close one.  Although plaintiff admits he removed his hands from the wall during the pat frisk, did not suffer any injury as a result of Russell's conduct, and the entire incident lasted fewer than five seconds, that he did not suffer injury and that there was a reason for some use of force, there is a material question of fact as to whether the type and degree of force used "slamming plaintiff" to the ground was objectively reasonable compared to any other method that could have been used to return plaintiff's hands to the wall or otherwise secure them. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1002).  There is no testimony with respect to Russell's mental state or the threat he reasonably perceived.  *See Oudekerk*, 2025 WL 3286723, at \*4.

Indeed, a trier of fact could determine that the level of force used was not reasonable in response to plaintiff's conduct of removing his hands to fix his face mask. Thus, the trier of fact could conclude that Russell's use of force was excessive and maliciously or wantonly done.  Accordingly, it is recommended that plaintiff's defendants' motion to dismiss plaintiff's Eighth Amendment excessive force claim against Russell be denied

### 2. **Failure-to-Intervene**

#### a. **Olsen**

Defendants argue that, even if Russell's use of force rose to an unconstitutional level, plaintiff failed to argue that Olsen had a realistic opportunity to intervene as the

conduct occurred "in less than five seconds" and Olsen was holding a handheld camera. Dkt. No. 218 at 7. Plaintiff contends that the point of the camera was "to deter any assaults, and failure to use the video to intervene clearly establishes a genuine issue of material fact on the failure to intervene claim." *Id.*

The undersigned agrees that plaintiff has failed to show that Olsen had a realistic opportunity to physically intervene to prevent the conduct from occurring given that it occurred so quickly – in fewer than five seconds. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y. 2010) ("The liquid throwing incident began and ended within a matter of seconds, an increment of time too 'sudden and brief' to give Defendants a 'realistic opportunity' to respond and intervene on behalf of the Plaintiff."); *see also Rosen v. City of New York*, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) ("In the context of a failure to intervene claim, an officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene.").

To the extent plaintiff argues that the Olsen's allegedly intentional conduct of pointing the camera away from the incident – a camera which was used to deter assaults – amounts to a failure to intervene must fail. First, for the same reasons noted above, the incident occurred in fewer than five seconds and there is nothing to suggest that Olsen would have been able to react quickly enough to position the camera to capture any such incident. *See McLeod v. Llano*, No. 17-CV-6062 (ARR/SMG), 2019 WL 1129429, at *3 (E.D.N.Y. Mar. 12, 2019) ("[I]t is well-established that an officer is not liable for failing to intervene if the use of force is 'sudden and brief.'") (citation omitted). Further, plaintiff plainly states that he is basing this argument on the fact that the camera was present as

a deterrent.  However, as the alleged assaulter is Russell, it is his conduct that must be deterred.  Plaintiff sets forth no facts or allegations to at all suggest that Russell and Olsen conspired to have Olsen point the camera away from any incidents of force that could occur.  Accordingly, the undersigned recommends that the Court grant defendants' motion with respect to plaintiff's failure-to-intervene claim against defendant Olsen.

### b. **Gravlin**

Defendants argue that plaintiff's failure-to-protect claims against Gravlin must be dismissed due to a lack of personal involvement as plaintiff alleges only that Gravlin threatened him after the third alleged assault but never touched plaintiff.  *See* Dkt. No. 209-7.  Plaintiff essentially contends that the claims against Gravlin should not be dismissed because the conduct Gravlin threatened – that Welch and Mitchell would beat plaintiff – came true, establishing "a genuine issue of material fact on the failure to intervene claim."  Dkt. No. 216-2 at 4.  As noted,

> "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (cleaned up). "An officer who fails to intercede in . . . another constitutional violation is liable for the preventable harm caused by the actions of other officers." *Id.* An officer can be liable under § 1983 where "[i] the officer had a realistic opportunity to intervene and prevent the harm; [ii] a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and [iii] the officer does not take reasonable steps to intervene." *Taylor v. City of N.Y.*, No. 19-CV-6754, 2022 WL 744037, at *21 (S.D.N.Y. Mar. 11, 2022) (cleaned up).

*Vasquez v. Warren*, 630 F. Supp. 3d 524, 542 (S.D.N.Y. 2022).

The undersigned agrees that plaintiff does not argue nor demonstrate that Gravlin was present during the alleged uses of force.[6]  Thus, plaintiff "cannot plausible argue that [Gravlin] had a realistic opportunity to intervene" on the alleged use of force. *Vasquez*, 630 F. Supp. 3d at 542 (citing *Arbuckle v. City of N.Y.*, 14 Civ. 10248 (ER), 2016 WL 5793741, at *15 (S.D.N.Y. Sept. 30, 2016)).  Accordingly, it is recommended that the failure-to-intervene claim against Gravlin be dismissed.

### C.  First Amendment Retaliation

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

"To be an 'adverse action,' retaliatory conduct must be the type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her

---

[6]  Further, he did not allege, let alone demonstrate, that Gravlin was engaged in a conspiracy with Welch and Mitchell to assault plaintiff.

20

constitutional rights.'" *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (quoting *Davis*, 320 F.3d at 353)).

> To sufficiently allege a causal connection between protected activity and an adverse action, the plaintiff's "allegations must support an inference that the protected conduct was a substantial and motivating factor for the adverse action." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order). A plaintiff can establish a causal connection giving rise to an inference of retaliation by showing, for example, that the protected activity was close in time to the adverse action. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *Espinal*, 558 F.3d at 129.

*Gentile v. Burnett*, No. 22-CV-8411 (LTS), 2022 WL 16950220, at *6 (S.D.N.Y. Nov. 14, 2022). Further, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

### 1. **Russell & Welch: Protected Conduct**

Defendants argue that plaintiff's retaliation claims against Russell and Welch must be dismissed because plaintiff testified that they retaliated based on prior assaults rather than grievances. *See* Dkt. No. 209-7 at 15; Dkt. No. 218 at 7("Without pointing to any contrary evidence in the record, Plaintiff denies that his retaliation claims against Russell and Welch are based upon alleged prior assaults and not grievances he wrote."). Plaintiff alleges that his retaliation claims are based on prior lawsuits. *See* Dkt. No. 119 at 2 (Russell: "plaintiff filed a grievance against Russell for harassment" and a lawsuit, *Bradshaw v. Uhler*, 21-CV-0901; Welch: plaintiff filed a complaint in this Court, *Bradshaw v. Fletcher*, 19-CV-0428); Dkt. No. 216 at2 (Welch: lawsuit, *Bradshaw v. Fletcher*, 19-CV-0428; Dkt. No. 216-2 at 4-6 (lawsuit against Welch, grievances and complaints against Russell).

21

Although defendants aver that plaintiff testified that the July 12, 2021, assaults were because of prior assaults, this is a credibility determination. Further, the colloquy defendants cite does not explicitly demonstrate what defendants allege.

> A. No, My – my retaliation claim against Russell is not related. It's not related to any of those grievances either. It was a prior incidents [sic] that occurred and that's the basis of my retaliation plan against Russell.
> Q: Okay. So what about Walch? Did – did you name Walch in the May 20, 2021 grievance?
> A. None of – None of those grievances either. Walch is likewise based on incidents that previously happened that he assaulted me in the past.

Dkt. No. 218 at 8 (quoting Plaintiff's Deposition, Dkt. No. 209-2 at 77). However, this portion of the deposition transcript reveals that plaintiff was asked about grievances, exclusively, not lawsuits. *See* Dkt. No. 209-2 at 76-77. Further, by plaintiff testifying that his retaliation claims against Russell and Welch were not based on grievances he filed but "prior incidents" where Russell and Welch assaulted him, this testimony is not entirely inconsistent with his claims in his opposition papers (and his claims in his SAC) that the retaliation claims arose out of lawsuits he brought against these defendants. Plaintiff stated in his complaint that the lawsuit against Russell was for harassment and a false misbehavior report, and contends that the case against Welch was for physical sexual assault. *See* SAC at 2. However, even the case against Russell for harassment is not necessarily inconsistent with the above vague testimony – citing "prior incidents." Dkt. No. 209-2 at 77.

Yet, even if there exists a conflict between plaintiff's deposition testimony and his complaint/response in opposition to the motion for summary judgment, "such contradictions between the complaint and deposition testimony are credibility issues not appropriately disposed of on summary judgment. Thus, inconsistencies will not require

the undersigned to grant defendants' motion for summary judgment." *Delgado v. Potter*, No. 13-CV-728 (DNH/CFH), 2014 WL 7883549, at *7 (N.D.N.Y. Dec. 19, 2014), *report and recommendation adopted in part*, *rejected in part*, No. 9:13-CV-728 (DNH/CFH), 2015 WL 667551 (N.D.N.Y. Feb. 17, 2015) (citing *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996)) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."); *cf. O'dell v. Bill*, No. 9:13-CV-1275 (FJS/TWD), 2015 WL 710544, at *28 (N.D.N.Y. Feb. 18, 2015) (citing, *inter alia*, *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) (noting that the "standard rule" at summary judgment stage is court is "to eschew credibility assessments" with the "narrow exception" being "where the sole basis for the disputed issues of fact is the plaintiff's 'own testimony' which is so lacking in credibility that no reasonable juror could find for the plaintiff.")).  This is one contradiction, not several, and the scale tips even more toward denying summary judgment on this ground when the Court must take into consideration the special solicitude due to the pro se plaintiff.

Accordingly, it is recommended that defendants' motion for summary judgment as to plaintiff's First Amendment retaliation claim against defendants Russell and Welch be denied for this reason.

2. **Orbegozo, Marshall, Gordon, Locke, Russell & Welch: Causal Connection**

Defendants contend that plaintiff's First Amendment retaliation claims against Orbegozo, Marshall, Gordon, Locke, Russell, and Welch,[7] must be dismissed because plaintiff has not demonstrated a causal connection between his grievances and the

---

[7] As defendants do not clearly connect the causal connection argument to certain defendants and use the term defendants, collectively, the undersigned reasonably presumes defendants apply this argument to all defendants named in the First Amendment retaliation claims.  *See* Dkt. No. 209-7 at 15.

alleged assaults on July 12, 2021. *See* Dkt. No. 209-7 at 15. Defendants contend that plaintiff did not tell any of the defendants or anyone else that defendants were aware of his grievances and does not allege that defendants ever mentioned his grievances or protected conduct during the July 12, 2021, assaults. *See id.* They point out that plaintiff alleges that only Marshall ever said anything to him during the assaults, and it was not about plaintiff's grievances. *See id.*

Plaintiff argues that the fact that he alleges that Orbegozo, Marshall, Gordon, and Lock assumed different posts than assigned or switched posts to be assigned to plaintiff's gallery or escort is sufficient causal connection. *See* Dkt. No. 216-2 at 5. He further contends that there exists "an unwritten policy at Upstate for officers to assume or switch a post to engage prisoners who file grievances for purposes of harassment, intimidation or assault." Dkt. No. 216-2 at 5. Plaintiff argues that these claims suffice to create a genuine issue of material fact on the question of causal connection such that summary judgment should be denied as to his retaliation claims. *See id*.

Although plaintiff contends that the alleged actors were all defendants against whom he filed grievances, even if it is true that they switched their posts to plaintiff's gallery, that could demonstrate their intent to have access to plaintiff to assault him, but it does not –without more – suffice to demonstrate that they wished to assault him because of the prior protected activity.[8] As noted, a prisoner pursuing a retaliation claim cannot rest his claims on wholly conclusory allegations, but "specific and detailed" supporting facts. *Dolan v. Connolly*, 794 F.3d 290 294 (2d Cir. 2015). Plaintiff does not

---

[8] As defendants address only the causal connection element, they have conceded that plaintiff's conduct is protected speech and that the alleged retaliatory conduct would deter a similarly-situated individual of ordinary firmness from exercising his constitutional rights. *See Dolan*, 794 F.3d at 294; *Davis*, 320 F.3d at 353. Thus, the undersigned addresses only the causal connection element.

indicate that any defendant mentioned his grievance during or leading up to the alleged assaults. *Cf. Povoski v. Lacy*, No. 9:14-CV-97 (BKS/CFH), 2017 WL 9511094, at *15 (N.D.N.Y. Dec. 13, 2017), *report and recommendation adopted*, No. 9:14-CV-0097 (BKS/CFH), 2018 WL 547392 (N.D.N.Y. Jan. 17, 2018) ("[U]pon learning that plaintiff had sued the non-party corrections officer, C.O. Pray allegedly stated, '[s]o you are suing my buddy Kevin, [sic] we know how to fix inmates like you, Povoski,'and then proceed to joke with Sgt. Archambault 'about their intent to physically [injure him] on his return from the video court appearance.' Defendants' statements suggest a retaliatory motive and signify that plaintiff's lawsuit may have been a "substantial or motivating factor" in the defendants' alleged decision to assault plaintiff."). Thus, the defendants' changing or switching their posts, alone, does not suffice to establish causal connection.

Although addressed by neither plaintiff nor defendants,[9] plaintiff engaged in protected activity relatively close in time to the alleged assaults for three of the named defendants. Plaintiff alleges that he filed grievances against Orbegozo on May 20, 2021, and June 7, 2021. *See* SAC at 119 at 2. He contends that he filed grievances against Marshall on May 20, 2021, and June 27, 2021. *See id.* at 2. Plaintiff further provides he filed a grievance against Gordon on May 20, 2021, and May 31, 2021. *See id.* The assaults at issue were alleged to have occurred on July 12, 2021. "[A] period of several days between a protected activity and an adverse action easily supports an inference of causal connection." *Rivers v. Squires*, No. 23-CV-154-LJV, 2024 WL 2702203, at *2 (W.D.N.Y. May 24, 2024) (citing *Wright v. Snyder*, 3:21-CV-104 (SVN), 2023 WL 6379451, at *11 (D. Conn. Sept. 30, 2023) ("The Second Circuit has held that

---

[9] The undersigned acknowledges and addresses the temporal proximity element due to special solicitude.

an adverse action occurring 'just days' after the plaintiff's protected activity raises a genuine dispute of fact about the causal connection.") (quoting *Bennett v. Goord*, 343 F.3d 133, 138 (2d Cir. 2003)).  Here, the protected activity occurred between approximately one and two months prior to the assaults.  *See Povoski,* 2017 WL 9511094, at *15 ("The Second Circuit has established that no more than six months between the protected activity and the adverse action establishes the temporal proximity sufficient to support an inference of causal connection. ") (citing *Espinal*, 558 F.3d at 129).  Although the defendants' alleged switching of posts and assigning themselves to plaintiff's escort, alone, would not suffice to demonstrate causal connection, considering that argument, together with the temporal proximity, creates an inference of causal connection with respect to defendants Orbegozo, Marshall, and Gordon sufficient to defeat summary judgment.

However, the protected activity involving Locke, Russell, and Welch occurred in September 2019 and March 2018 – too far attenuated to demonstrate a causal connection based on temporal activity.  *See* SAC at 2.  Thus, the absence of temporal proximity or any other causal connection with respect to these defendants leads the undersigned to conclude that plaintiff has failed to meet his burden of demonstrating that his protected activity was a substantial and motivating factor in the alleged assaults as to Locke, Russell, and Welch.  *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted) (holding that the plaintiff "bears the burden of showing, first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials.").  Accordingly, it is recommended that defendants' Motion for Summary Judgment, insofar

as it seeks to dismiss plaintiff's First Amendment retaliation claims, be denied as against

Orbegozo, Marshall, Gordon, and be granted as against Locke, Russell, and Welch.

## VI.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that defendants' Motion for Partial Summary Judgment, Dkt. No. 209, be **GRANTED IN PART** as follows:

(1) plaintiff's Supervisory Liability claim against defendant Bishop and Uhler;

(2) plaintiff's Eighth Amendment failure-to-protect/intervene claims against defendants Olsen and Gravlin;

(3) plaintiff's First Amendment retaliation claims against defendants Locke, Russell, and Welch; and it is further

**RECOMMENDED**, that defendants' Motion for Partial Summary Judgment, Dkt. No. 209, be **DENIED IN PART** as follows:

(1) plaintiff's Eighth Amendment excessive force claim against defendant Russell;

(2) plaintiff's First Amendment retaliation claims against Orbegozo, Marshall, and Gordon; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human*

*Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[10]

Dated: February 9, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

[10] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal federal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal federal holiday. *See id.* § 6(a)(1)(c).